IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AORTIC INNOVATIONS LLC, | |
| Plaintiff, | |
| v. | C.A. No. 23-158 (JPM) |
| EDWARDS LIFESCIENCES CORP., *et al.*, | |
| Defendants. | |

## BRIEF IN SUPPORT OF NON-PARTY ARTIVION, INC.'S MOTION TO QUASH DEFENDANTS' THIRD-PARTY DEPOSITION SUBPONEA AND NON-PARTIES ARTIVION, INC.'S AND ASCYRUS MEDICAL LLC'S MOTION FOR ENTRY OF A PROTECTIVE ORDER AND AWARD OF EXPENSES

BAKER & HOSTETLER LLP
Daniel J. Goettle (#6664)
Jeffrey J. Lyons (#6437)
1201 N. Market Street, Suite 1407
Wilmington, DE 19801-1147
(302) 407-4222
dgoettle@bakerlaw.com
jjlyons@bakerlaw.com

*Attorneys for Non-Parties*
*Artivion, Inc. and Ascyrus Medical LLC*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................................... 3

    A.    The Underlying Patent Litigation. ........................................................... 3

    B.    Ascyrus, Artivion, And The Acquisition Of Ascyrus. ............................. 4

    C.    The July 17 Document And Deposition Subpoena To Ascyrus. ............... 5

    D.    The Deposition Subpoena To Artivion. ................................................... 7

    E.    The Accused Products. ............................................................................ 8

    F.    The AMDS Products. .............................................................................. 8

    G.    Most Recent Discussions To Resolve Dispute About The Subpoenas. ................. 9

III.  ARGUMENT ...................................................................................................... 10

    A.    The Court Should Quash The November 14 Subpoena And Enter A Protective Order As To Both Subpoenas. ............................................... 11

        1.    The Subpoenas Seek Documents and Testimony That Are Not Relevant To The Underlying Dispute. ....................................... 12

        2.    The Relevant Information Has Already Been Produced or Is Available Directly from Aortic in Litigation. ............................. 15

        3.    The Market Information Is Publicly Available. ........................ 16

        4.    The Subpoenas Improperly Seek Privileged or Highly Confidential, Business-Sensitive Information from A Competitor That Is Not Relevant to the Dispute. ............................................................ 16

    B.    The Artivion Parties' Motion Is Timely. ............................................... 18

    C.    The Artivion Parties Are Entitled To Fees And Costs. ........................... 19

IV.   CONCLUSION ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Howmedica Leibinger*,
190 F.R.D. 518 (W.D. Tenn. 1999) ...................................................................13

*Am. Standard, Inc. v. Pfizer, Inc.*,
828 F.2d 734 (Fed. Cir. 1987)............................................................................17

*Andritz Sprout-Bauer v. Beazer East*,
174 F.R.D. 609 (E.D. Pa. 1997)..........................................................................13

*Apex Fin. Options, LLC v. Gilbertson*,
No. MC 21-023-LPS-SRF, 2021 WL 965509 (D. Del. Mar. 15, 2021) ..................12

*Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*,
11-cv-2450, 2013 WL 5423852 (N.D. Ill. Sept. 27, 2013)...............................11, 12

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) ..........................................................................19

*Cusumano v. Microsoft Corp.*,
162 F.3d 708 (1st Cir. 1998)...............................................................................17

*Dart Indus. Co., Inc. v. Westwood Chem. Co.*,
649 F.2d 646 (9th Cir. 1980) ..............................................................................17

*DeGregorio v. Phillips Elecs. N. Am. Corp.*,
07-cv-2683, 2007 WL 4591966 (N.D. Ill. Dec. 28, 2007) ....................................12

*Deitchman v. E.R. Squibb & Sons, Inc.*,
740 F.2d 556 (7th Cir. 1984) ..............................................................................13

*In re Domestic Drywall Antitrust Litig.*,
300 F.R.D. 234 (E.D. Pa. 2014)..........................................................................13

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
C.A. No. 1:89-0894X, 1991 WL 172930 (N.D. Ohio June 21, 1991)....................19

*Hickman v. Taylor*,
329 U.S. 495 (1947).............................................................................................11

*Konstantopoulos v. Westvaco Corp.*,
No. 90-146, 1991 WL 269606 (D. Del. Dec. 13, 1991) ........................................15

*Mannington Mills, Inc. v. Armstrong World Indus.*,
206 F.R.D. 525 (D. Del. 2002) .................................................................17, 18

*Micro Motion, Inc. v. Kane Steel Co.*,
894 F.2d 1318 (Fed. Cir. 1990)..............................................................................13

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,
No. 03-1382, 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003) .................................13

*PHL Variable Ins. Co. v. Alan Wollman Ins. Tr.*,
C.A. No. 08-53- JJF, 2010 WL 2836388 (D. Del. July 16, 2010).........................18

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
No. C.A.04-1371 JJF, 2006 WL 2604540 (D. Del. Aug. 24, 2006).......................17

*Robinson Steel Co. v. Caterpillar, Inc.*,
10-cv-438, 2012 WL 5903769 (N.D. Ind. Nov. 21, 2012) ....................................11

*Schmulovich v. 1161 Rt. 9 LLC*,
No. 07-597, 2008 WL 4572537 (D.N.J. Oct. 10, 2008) ........................................13

*Smith v. BIC Corp.*,
869 F.2d 194 (3d Cir. 1989).................................................................................12

*Stamy v. Packer*,
138 F.R.D. 412 (D.N.J. 1990).................................................................................13

*Syngenta Crop Prot. LLC v. Willowood, LLC*,
No. CV 16-MC-171-RGA, 2016 WL 4925099 (D. Del. Sept. 14, 2016)..............16

*In re TQ Delta*,
No. 17-mc-328, 2018 WL 5033756 (D. Del. Oct. 17, 2018)......................11, 14, 15

*Va. Dep't of Corr. v. Jordan*,
921 F.3d 180 (4th Cir. 2019) ................................................................................12

*Verisign, Inc. v. XYZ.com, LLC*,
No. CV 15-MC-175-RGA-MPT, 2015 WL 7960976 (D. Del. Dec. 4, 2015).........17

**Rules**

FED. R. CIV. P. 26 ....................................................................................................12

FED. R. CIV. P. 26(b)(1) ..........................................................................................12

FED. R. CIV. P. 26(b)(2)(C) .....................................................................................12

FED. R. CIV. P. 26(c)...........................................................................................1, 11

FED. R. CIV. P. 26(C)(1) ................................................................................................ 1, 11, 20

FED. R. CIV. P. 45 ................................................................................................................. 1, 20

FED. R. CIV. P. 45(B)(1) ............................................................................................................ 5

FED. R. CIV. P. 45(C)(1) .......................................................................................................... 19

FED. R. CIV. P. 45(C)(3)(A) ..................................................................................................... 18

FED. R. CIV. P. 45(D)(1) .......................................................................................................... 19

FED. R. CIV. P. 45(D)(3)(A)(IV) ............................................................................................. 11

FED. R. CIV. P. 45(D)(3)(B) ..................................................................................................... 12

FED. R. CIV. P. 45(D)(3)(B)(I) ................................................................................................. 17

FED. R. EVID. 901 ..................................................................................................................... 7

## I.     INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 26(c) and 45 and the Court's inherent power, non-party Artivion, Inc. ("Artivion") respectfully moves for an order quashing the deposition subpoena issued by Defendants Edwards Lifesciences Corp., Edwards Lifesciences LLC, and Edwards Lifesciences (US) Inc. (collectively, "Edwards") in connection with the above-identified patent litigation pending in the District of Delaware. Additionally, Artivion and its wholly owned subsidiary Ascyrus Medical LLC ("Ascyrus") (collectively, "the Artivion Parties") respectfully move for entry of a protective order under Federal Rule of Civil Procedure 26(c)(1) precluding Edwards from seeking further document discovery and testimony from the Artivion Parties based upon the document and deposition subpoena to Ascyrus and the deposition subpoena to Artivion (collectively, "Subpoenas"). Furthermore, the Artivion Parties respectfully request that the Court award them reimbursement of all expenses they have incurred for having to bring these Motions.

Respectfully, the Court should quash the deposition subpoena and protect the Artivion Parties from further discovery for multiple reasons, all of which are independently sufficient.

***First***, the Subpoenas seek documents and testimony that are not relevant to the underlying patent litigation. Specifically, the action between Plaintiff Aortic Innovations LLC ("Aortic") and Edwards relates to Aortic's allegations that Edwards' SAPIEN 3 Ultra transcatheter heart valves having either Resilia or non-Resilia tissue leaflets ("Accused Products") infringe Aortic's U.S. Patent Nos. 11,337,834; 11,389,310; 11,491,033; 11,497,634; and 11,523,918 (collectively, the "Asserted Patents"). Edwards disputed Aortic's allegations, and lodged twenty counterclaims seeking declaratory judgment of noninfringement, invalidity, prosecution laches, and unenforceability due to inequitable conduct. (D.I. 61.)

The Accused Products are devices for transcatheter aortic valve replacement ("TAVR"). Curiously, Edwards seeks third-party discovery from the Artivion Parties—with whom Edwards

competes on many fronts—regarding Artivion's AMDS hybrid prosthesis devices (the "AMDS Products"), which are *not* TAVR devices or heart valves at all but, as is explained in more detail below, are completely unrelated devices used for the open-heart surgical treatment of acute Type A dissections of the aorta. Edwards' Subpoenas broadly seek privileged, confidential, and proprietary documents, information, and testimony irrelevant to the underlying litigation and related to Artivion's acquisition of Ascyrus as well as the Artivion Parties' "licensing, sales, potential sales, acquisition of *any* intellectual property" and their worldwide "market analyses of transcatheter or minimally invasive heart valve replacement methods, devices, or technology"— none of which has anything to do with the litigation.

**Second**, even if the requested documents and information had some marginal relevance, the Subpoenas place an undue burden on the Artivion Parties that outweighs any benefit to Edwards in obtaining the Artivion Parties' commercially sensitive information. In fact, many of the requests seek information from Artivion and about Ascyrus that **pre-dates** Artivion's acquisition of Ascyrus—a single-employee company at the time of acquisition that was owned and operated by Plaintiff's CEO. To avoid unnecessary motion practice, however, the Artivion Parties attempted to cooperate in good faith to reasonably narrow the scope of the Subpoenas and have already invested significant time and resources collecting and producing relevant, responsive documents. To be clear, the Artivion Parties **have already produced** to Edwards approximately 1,500 pages of documents relating to Artivion's acquisition of Ascyrus in September 2020 even though such information is irrelevant to the litigation. For sure, Edwards cannot show that the additional, irrelevant information it seeks is proportional to the needs of the underlying action.

**Third**, Edwards fails to—because it cannot—demonstrate that the **relevant** information it seeks could not be obtained directly from publicly available sources or directly from defendant

Aortic in discovery in the pending action. Indeed, the docket shows that discovery between the parties is ongoing, including outstanding noticed depositions and pending motions to compel. *See, e.g.*, D.I. 122 (Edwards' Motion to Compel Search Terms); D.I. 143 (Depo. Notice of Dr. Shahriari); D.I. 144 (Depo Notice of Dr. Dewey); D.I. 145 (Edwards 2nd Set of Rogs and 1st Set of RFAs); D.I. 147 (Aortic's Supplemental Responses to 1st of Rogs); D.I. 149 (Rule 30(b)(6) Depo Notice of Aortic). Much of the requested documents and testimony are publicly available or, alternatively, are available directly from the parties to the litigation (such as "license agreements between Ascyrus **and Aortic**" and "communications between Ascyrus **and Edwards**").

The Artivion Parties repeatedly requested that Edwards withdraw or narrow the Subpoenas and that the parties cooperate to obviate the need for any deposition testimony, but Edwards declined to do so, forcing the Artivion Parties to bring these motions. Thus, for all these reasons, which are more fully articulated below, the Subpoenas are overly broad and unduly burdensome and seek information not relevant or proportional to the needs of the underlying patent case. There is also no basis to burden non-parties Artivion and Ascyrus for information that Edwards will be receiving from Aortic through discovery efforts between the parties in the underlying case. Accordingly, the Court should quash the Artivion deposition subpoena and issue a protective order as to both Subpoenas prohibiting further discovery efforts on the Artivion Parties.

## II.    STATEMENT OF FACTS

### A.    THE UNDERLYING PATENT LITIGATION.

On February 12, 2023, Aortic filed the underlying patent infringement action against Edwards, alleging that the Accused Products infringed the Asserted Patents. D.I. 1. The complaint has been thrice amended, with the currently operative complaint filed on January 8, 2024. D.I. 52. Edwards answered the operative complaint on February 5, denying it infringed and asserting twenty declaratory judgment counterclaims. D.I. 61. Aortic answered the counterclaims on March

25, denying that Edwards is entitled to any judgment, remedy, or relief against Aortic. D.I. 80. Fact discovery is currently scheduled to close on December 4, 2024.

B.    ASCYRUS, ARTIVION, AND THE ACQUISITION OF ASCYRUS.

In 2015, Plaintiff Aortic's CEO, Dr. Ali Shahriari, founded Ascyrus. (Freitag Decl. ¶ 3.)[1] Dr. Shahriari led the development of and is the named inventor on multiple patents covering the Ascyrus Medical Dissection Stent ("AMDS"), an aortic arch remodeling device used for the treatment of acute Type A aortic dissections as discussed more fully below. (*Id.* ¶ 4.)

Artivion was founded as CryoLife, Inc. ("CryoLife") in 1984. (*Id.* ¶ 5.) On January 12, 2022, CryoLife changed the name of the corporation to Artivion, effective January 18, 2022. (*Id.* ¶ 6.) A Delaware corporation, Artivion is a leader in the manufacturing, processing, and distribution of medical devices and implantable human tissues used in cardiac and vascular surgical procedures for patients with aortic disease. (*Id.* ¶¶ 2, 7.) In doing so, Artivion has four major product families: aortic stent grafts, surgical sealants, On-X® mechanical heart valves and related surgical products, and implantable cardiac and vascular human tissues. (*Id.* ¶ 8.) Importantly, a number of Artivion's products are direct or indirect competitors with products offered for sale by Edwards. (*Id.* ¶ 9.)

Following numerous rounds of diligence spanning several years and involving multiple diligence teams, Artivion acquired 100% of the outstanding equity interests of Ascyrus on September 2, 2020. (*Id.* ¶ 10.) The terms of Artivion's acquisition of Ascyrus are publicly available in the Securities Purchase Agreement for that acquisition (the "SPA"), which is available on the SEC website. (*Id.* ¶ 11.) Moreover, the financial details of the SPA have been summarized in

---

[1] "Freitag Decl." refers to the Declaration of Walter S. Freitag, filed contemporaneously herewith.

Artivion's press releases and in each of its subsequent quarterly filings and annual reports, all of which are available on Artivion's website. (*Id.* ¶ 12.)

### C.    THE JULY 17 DOCUMENT AND DEPOSITION SUBPOENA TO ASCYRUS.

Edwards issued a subpoena to Ascyrus on July 17, 2024, seeking documents and a deposition on August 21 ("July 17 Subpoena"). (Ex. 1.) Edwards initially attempted to serve Ascyrus's agent for service of process with the July 17 Subpoena on July 19 but failed to include the required witness fees under Rule 45(b)(1). (*Id.* ¶ 14.) Edwards then re-served the July 17 Subpoena on July 22 and included the witness fee. (*Id.* ¶ 15.)

The July 17 Subpoena compelled Ascyrus to produce ten categories of documents at the deposition. (Ex. 1.) Additionally, the July 17 Subpoena included nine deposition topics that tracked the document requests. (*Id.*) On July 26, Artivion, on behalf of Ascyrus, emailed Edwards asking for a 30-day extension of time to consider the July 17 Subpoena. (Freitag Decl. ¶ 16.) On July 30, counsel for the parties discussed by phone the extension request. (*Id.* ¶ 17.) Edwards would agree to only an extension through August 19, a mere 14-days from service. (*Id.* ¶¶ 18–20.) Edwards refused (and continues to refuse) to withdraw the subpoenaed deposition. (*Id.* ¶ 18.)

On August 19, Artivion, on behalf of Ascyrus, sent Edwards a letter objecting to the July 17 Subpoena. (*Id.* ¶ 21.) The parties met-and-conferred on September 3, whereby Ascyrus reiterated its objections, but in the spirit of cooperation, Ascyrus agreed to produce a limited number of documents. (*Id.* ¶ 23.) Edwards, in turn, agreed to withdraw document requests nos. 9 and 10, to de-calendar the Ascyrus deposition, and to revisit whether it even needed a deposition after receipt of Ascyrus's documents. (*Id.*) Between September 10 and 11, Edwards and Ascyrus continued to discuss the objectionable scope of the document requests. (*Id.* ¶¶ 24–25.)

Thereafter, on September 17, Edwards purportedly attempted to supplement the document categories included in the July 17 Subpoena by email to Artivion's in-house counsel, specifically seeking the following amended and additional categories:

1. Documents and communications regarding any valuation, due diligence, or investigation relating to Artivion's acquisition of Ascyrus.
2. Documents and communications regarding any licensing agreements between Artivion and Ascyrus.
3. Documents and communications regarding any patent or patent applications that name Dr. Shahriari as an inventor.

(*Id.* ¶ 26.) Artivion's counsel neither acknowledged nor agreed to respond to the additional document requests as it was well into its efforts of collecting and preparing to produce documents consistent with the parties' September 3 meet-and-confer telephone conference. (*Id.* ¶ 27.)

Ascyrus produced responsive documents on September 27 and maintained its objections to certain document request categories as overbroad, disproportionate, redundant, unduly burdensome, and irrelevant. (*Id.* ¶ 28.) On October 7, Edwards demanded that Ascyrus make a broader production to capture the emailed categories. (*Id.* ¶ 29.) On October 25, Artivion, on behalf of Ascyrus, responded that it conducted a thorough search of the documents it obtained from its acquisition of Ascyrus and that it had produced the entirety of the non-privileged, non-objectionable documents responsive to the July 17 Subpoena. (*Id.* ¶ 30.) It further explained that it would not produce documents responsive to the emailed categories seeking (i) Artivion's valuation, due diligence, and analysis of unrelated businesses and unrelated technologies, (ii) the unbounded request for communications about the previously produced unredacted licensing agreements, or (iii) the unbounded request for all documents and communications regarding any patents or patent applications that identify Dr. Shahriari as an inventor. (*Id.*)

### D.    THE DEPOSITION SUBPOENA TO ARTIVION.

On November 4, Edwards made multiple attempts to serve deposition subpoenas on Artivion via email addressed to Artivion's in-house counsel ("November 4 Subpoena").[2] (Freitag Decl. ¶ 31.) In-house counsel had never previously consented to accept service via e-mail on behalf of Artivion or Ascyrus. (*Id.* ¶ 33.) The November 4 Subpoena commanded Artivion to appear for deposition on November 19. (*Id.* ¶ 34.) On November 12, Edwards emailed Artivion's in-house counsel to finalize the arrangements for the November 19 deposition. (*Id.* ¶ 35.) Later that same day, Artivion informed Edwards that the November 4 Subpoena was defective, that Edwards had not properly served Artivion, and that Artivion would not produce a witness for deposition. (*Id.* ¶ 36.) As an alternative, Artivion again offered to provide an affidavit pursuant to FRE 901 to authenticate the 1,500 pages of documents it had already produced. (*Id.*)

On November 13, 2024, Edwards responded suggesting that Artivion's refusal to accept service was unnecessarily increasing the costs "with formal service" but that it would immediately proceed to do so. (*Id.* ¶ 37.) It rejected the offer of an affidavit in lieu of a deposition, stating that it never agreed to withdraw the July 17 Subpoena seeking a deposition of Ascyrus and contended that Ascyrus's document production remained incomplete and warranted Court intervention. (*Id.*)

On November 14, Edwards reissued a deposition subpoena and served Artivion's agent for service of process. (*Id.* ¶ 38.) Like before, the initial subpoena did not include a witness fee. (*Id.*) A few hours later, Edwards again served Artivion's agent with a deposition subpoena, this time with the witness fees ("November 14 Subpoena"). (*Id.*) The November 14 Subpoena commanded Artivion to produce a witness for deposition on December 2, to testify about five topics. (Ex. 2.)

---

[2] The first subpoena was emailed to InSoo Lee on November 4 at 4:47 PM. (Freitag Decl. ¶ 32.) It did not include any topics or provide the witness fee. (*Id.*) A "corrected" subpoena was emailed to Ms. Lee at 6:48 PM. It included topics but did not include a witness fee payment. (*Id.*)

E.    THE ACCUSED PRODUCTS.

The Accused Products are TAVR devices used to replace a patient's diseased aortic heart valves without the patient having to undergo invasive open-heart surgery. (Freitag Decl. ¶ 45.) To do so, the device is placed via minimally invasive surgery where a collapsed TAVR device with a small diameter is implanted into the patient by inserting the catheter through the patient's vasculature or through the apex of the heart. (*Id.* ¶ 46.) Unlike surgical valves, TAVR devices generally, and the Accused Products specifically, are indicated for use in patients with symptomatic heart disease due to a failing aortic bioprosthetic valve or a failing mitral surgical bioprosthetic valve (stenosed, insufficient, or combined) who are judged by a heart team to **be at high or greater risk for open surgical therapy**. (*Id.* ¶ 47.)

F.    THE AMDS PRODUCTS.

Neither Artivion nor Ascyrus make TAVR devices. Instead, Ascyrus developed AMDS Products for the treatment of acute Type A aortic dissections. (*Id.* ¶ 48.) Acute Type A aortic dissections are tears in the innermost layer of the aorta that create a false lumen between the layers of the aortic wall, typically occurring in the ascending aorta. (*Id.* ¶ 49.) Acute type A aortic dissections are a life-threatening, emergent condition, and left untreated, mortality rates approach 50% in the first 48 hours. (*Id.* ¶ 50.) Today, the standard of care is an ascending replacement or hemiarch repair, an ***open-heart*** surgical procedure that involves large incisions and the use of cardiopulmonary bypass. (*Id.* ¶ 51.) While this procedure can successfully remove the primary entry tear, it fails to adequately address the remainder of the diseased aorta, resulting in complications in both the acute and long-term phases. (*Id.* ¶ 52.)

The AMDS Products are the world's first devices designed to address the challenges of acute Type A aortic dissections, specifically DeBakey Type I dissections, and improve long-term patient outcomes. (*Id.* ¶¶ 53–54.) They are used to complement, and in conjunction with, hemiarch

replacement without adding technical complexity. (*Id.* ¶ 55.) Their design allows for rapid deployment of the graft in the aortic arch during a standard replacement of the ascending aorta, adding under five minutes to the procedure time. (*Id.* ¶ 56.) Their deployment preserves the native arch, potentially allowing for minimally invasive reinterventions, including the repair of additional entry tears, rather than more invasive arch repair options. (*Id.* ¶ 57.)

The use of the AMDS Products, as an adjunct to an open-heart surgical hemiarch repair to treat emergent life-threatening aortic dissection, is worlds apart from "minimally invasive" TAVR procedures, and the use of the Edwards' Accused Products to replace a stenosed heart valve in patients who face too great a risk to undergo open-heart surgery. (*Id.* ¶ 58.) Simply put, the Accused Product and the AMDS Products involve completely different surgical approaches, to achieve completely different clinical purposes, and treat completely different disease states.

### G.    MOST RECENT DISCUSSIONS TO RESOLVE DISPUTE ABOUT THE SUBPOENAS.

On November 17, outside counsel for the Artivion Parties contacted outside counsel for Edwards seeking clarification of the parties' prior communications regarding the Subpoenas. (*Id.* ¶ 39.) Specifically, the Artivion Parties asked whether Edwards intended to continue to pursue the depositions of the Artivion Parties and to continue to seek additional documents from Ascyrus. (*Id.* ¶ 40.) The Artivion Parties further stated they would ask the Court to intervene if Edwards continued to push for unreasonable depositions. (*Id.* ¶ 40.) Edwards responded on November 19, stating that it expects Artivion to produce a witness for deposition on December 2 and that Ascyrus had not complied with the July 17 Subpoena. (*Id.* ¶ 41.) Further, Edwards reserved the right to move to compel Ascyrus to produce additional documents. (*Id.*) Edwards sent another email on November 25, asking for the name of the deponent who will testify at the December 2 deposition. (*Id.* ¶ 42.) The Artivion Parties responded on November 26, reiterating their objection to the Subpoenas and noting their intent to file these Motions if Edwards did not immediately withdraw

the Subpoenas. (*Id.* ¶ 43.) Edwards refused. (*Id.*) The parties spoke by phone on November 27, but Edwards would not withdraw the Subpoenas. (*Id.* ¶ 44.)

## III.    ARGUMENT

The Subpoenas seek documents and depositions for information that is: (1) wholly irrelevant to the needs of the underlying case; (2) has already been provided or is equally available from Aortic in discovery; (3) is publicly available to or should already be in the possession Edwards; and (4) privileged or highly confidential proprietary information not relevant or proportional to Aortic's infringement allegations or Edwards' defenses.

The AMDS Products and Artivion's pre-acquisition analysis of the AMDS Products, the market, the Ascyrus business, and how each of those fit into Artivion's global strategy prior to Artivion's acquisition of Ascyrus are wholly unrelated to Aortic's claimed damages and the Accused Products. Additionally, Edwards has already received from the Artivion Parties over 1500 pages of documents in Artivion's possession related to the acquisition, even while the underlying litigating parties are still actively engaged in discovery among themselves. Many of these documents, including "license agreements between Ascyrus ***and Aortic***" and "communications between Ascyrus ***and Edwards***" should have been available directly from the parties to the litigation. Because Artivion is publicly traded, the most relevant evidence of its valuation of Ascyrus—the SPA, and summaries of the same—are publicly available on the internet.

Importantly, Artivion and Edwards are direct competitors. That said, the only relationship between the Accused Products, Artivion's AMDS Products, and Artivion's acquisition of Ascyrus can be Dr. Ali Shahriari—Aortic's CEO, the inventor of the Asserted Patents, and the former CEO of Ascyrus—which is far too tenuous of a connection to subject the Artivion Parties, as non-parties and competitors to Edwards, to such an expansive and burdensome fishing expedition into more of Artivion's proprietary and confidential medical device business and operations.

10

### A. THE COURT SHOULD QUASH THE NOVEMBER 14 SUBPOENA AND ENTER A PROTECTIVE ORDER AS TO BOTH SUBPOENAS.

Courts "*must* quash or modify a subpoena that . . . subjects a person to undue burden. *See* FED. R. CIV. P. 45(d)(3)(A)(iv) (emphasis added). Factors to determine whether a subpoena is unduly burdensome include "relevance, the requesting party's need for the documents, the breadth of the request, the time period covered, the particularity with which the documents are described, and the burden imposed in responding." *In re TQ Delta*, No. 17-mc-328, 2018 WL 5033756, at *2 (D. Del. Oct. 17, 2018) (quoting *Ebert v. C.R. Bard, Inc.*, No. 13-mc-277, 2014 WL 1365889, at *2 (M.D. Pa. Apr. 17, 2014)).

Furthermore, it is well established that "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). To that end, the power to enter a protective order protecting a party from undue burden or expense lies with the court. *See* FED. R. CIV. P. 26(c)(1) (granting courts power to enter a protective order to limit discovery). The Court should invoke its powers in this case and enter a Protective Order limiting further discovery from the Artivion Parties for the reasons set forth above. The factors the Court may consider in determining whether to enter a protective order barring a non-party subpoena include "'relevance, the need of the party for the [discovery], the breadth of the [discovery] request[ed], the time period covered by it, the particularity with which the [discovery is] requested, and the burden imposed.'" *Robinson Steel Co. v. Caterpillar, Inc.*, 10-cv-438, 2012 WL 5903769, at *3 (N.D. Ind. Nov. 21, 2012) (citation omitted). When a respondent seeks a protective order under Rule 26(c), the Court must balance the burden of compliance against the benefits of the requested production. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 11-cv-2450, 2013 WL 5423852, at *5 (N.D. Ill. Sept. 27, 2013). "In that balancing, nonparties are entitled to greater protection." *See id.* If the information

11

sought is not relevant, such as here, a protective order must be entered. *DeGregorio v. Phillips Elecs. N. Am. Corp.*, 07-cv-2683, 2007 WL 4591966, at *1 (N.D. Ill. Dec. 28, 2007)

Subpoenas must align with the scope of discovery allowed by Rule 26. *See Apex Fin. Options, LLC v. Gilbertson*, No. MC 21-023-LPS-SRF, 2021 WL 965509, at *3 (D. Del. Mar. 15, 2021). Discovery should be limited if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient," or the "burden or expense of the proposed discovery outweighs its likely benefit," considering "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(1), (b)(2)(C). In addition, courts may quash a subpoena if it requires the disclosure of confidential information. FED. R. CIV. P. 45(d)(3)(B).

When seeking discovery from a nonparty, a stricter analysis is required. *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 194 (4th Cir. 2019). Nonparties deserve special consideration as they should not be involved in disputes without a valid reason, even if they possess relevant information. *See id.* at 189. Courts weigh the benefit of discovery against the burden but must give special weight to nonparty status. *See id.* Ultimately, the requesting party must explain why the information cannot be obtained from the parties involved in the litigation or more suitable third parties. *See id.*

### 1.    *The Subpoenas Seek Documents and Testimony That Are Not Relevant To The Underlying Dispute.*

A subpoena must seek information relevant to the claims or defenses in the underlying litigation. *See Smith v. BIC Corp.*, 869 F.2d 194, 201–02 (3d Cir. 1989) (affirming district court's order quashing subpoenas due to issuing party's failure to demonstrate relevance); *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-597, 2008 WL 4572537, at *5 (D.N.J. Oct. 10, 2008) (quashing subpoena

because "information must be relevant before the Court will require its production"); *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, No. 03-1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) ("The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings"). Discovery may be denied if it is speculative. *See Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990).

Further, third-party discovery requires a stronger showing of relevance than party discovery, and that showing must be more than theoretical relevance—it "must enunciate some factual support for the theory with some degree of particularity." *Allen v. Howmedica Leibinger*, 190 F.R.D. 518, 524 (W.D. Tenn. 1999); *see also Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990). If the subpoenaed party contests relevance, then it is the issuing party's burden to prove its relevance. *See Andritz Sprout-Bauer v. Beazer East*, 174 F.R.D. 609, 631 (E.D. Pa. 1997).

In measuring a party's need for evidence from nonparties, courts look to a variety of factors, including the need to prepare an adequate defense or establish a claim, the availability of alternative evidence, the need to cross-examine expert witnesses, and the need for the underlying data. *See Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 561-63 (7th Cir. 1984). Courts in the Third Circuit have also held that the "standards for non-party discovery require a stronger showing of relevance than for party discovery." *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 240 (E.D. Pa. 2014) (internal quotation marks and citations omitted).

Taking into account the greater protection afforded to non-parties, much of the Subpoenas subject the Artivion Parties to an undue burden because they include overbroad requests for information that bears no relevance to any claim or defense in the underlying litigation. More particularly, the information regarding Artivion's acquisition of Ascyrus and the AMDS Products is wholly irrelevant to Aortic's infringement claims or Edwards' defenses and counterclaims

relating to the TAVR devices—which, again, function in an entirely different way and treat an entirely different disease state than the AMDS Products. Additionally, Edwards cannot meet the "higher burden" of showing that information regarding Artivion's decision to acquire Ascyrus's AMDS technologies or Artivion's analysis of the worldwide market for the AMDS Products generally is somehow relevant to their defenses to the underlying infringement claims. Artivion acquired a completely different company, with a completely different marketed product, that treats a completely different disease state through a wholly different surgical route. (*See generally* Freitag Decl.) Artivion's "diligence" relating to the market opportunity for that different product, the operations of that different company, the finances of that different company, the regulatory and clinical status of that different company's products, and any investor or funding interest for that different product is not relevant to Edwards's counterclaims and defenses.

Not only is the scope of the Subpoenas extraordinarily broad, but the requests are also not limited in time. Edwards' overly broad requests for documents, communications, and testimony about Artivion's multi-year, start-and-stop diligence efforts into Ascyrus are unbounded by time, custodian, or subject matter. Such an undue burden should not be placed on the Artivion Parties. *See TQ Delta*, 2018 WL 5033756, at *2 (finding undue burden because the requests lacked particularity and were not "limited in time, spanning a possible twenty years of documents and communications").

Even considering the possibility of marginal relevance, the Subpoenas place unduly burdensome requirements on the Artivion Parties given: (1) the vague and unbounded nature of the requests; (2) the fact that Artivion had multiple teams engage in multiple rounds of "diligence" before acquiring Ascyrus; and (3) the fact that Artivion's views and strategic decision making

about managing its aortic product and services portfolio would be competitively harmful if disclosed to the parties, including Edwards, who is a direct competitor in many fields.

> ### 2.    The Relevant Information Has Already Been Produced or Is Available Directly from Aortic in Litigation.

To be clear, the Artivion Parties have already produced all of the relevant, responsive documents in their possession.

Subpoenas create undue burdens where the information sought is available from parties to the litigation or publicly available sources. *See TQ Delta*, 2018 WL 5033756, at \*2 (quashing subpoena in part where many of the "requests are for information that could be acquired from either the Plaintiff itself or publicly available sources"); *Konstantopoulos v. Westvaco Corp.*, No. 90-146, 1991 WL 269606, at \*2 (D. Del. Dec. 13, 1991) (quashing subpoena because "subpoena is unduly burdensome or expensive and other means of obtaining the requested information may be available to the parties that would be less burdensome or expensive and more convenient").

Here, the Subpoenas impose an undue burden on the Artivion Parties because much of the documents and information Edwards continues to seek either has already been provided or should be readily obtainable directly from Aortic or Edwards. Notably, the Subpoenas seek, in pertinent part, (i) documents and testimony related to activities conducted by Aortic's CEO and his associates on behalf of Ascyrus related to potential licensing, sale, or acquisition of intellectual property—including Aortic's intellectual property—long pre-dating Artivion's acquisition of Ascyrus four years ago, (ii) documents and testimony relating to the legal and financial relationship between Aortic and Ascyrus and between Aortic's CEO and Ascyrus; (iii) documents and testimony relating to interest and funding from investors in Aortic's CEO's former company, Ascyrus, as well as the AMDS Products; (iv) documents and testimony evidencing communications between Ascyrus and Edwards, all of which occurred prior to the acquisition; (v)

documents and testimony regarding presentations sent from Ascyrus to Edwards several years before the acquisition; and (vi) documents and testimony regarding the license agreements to which Aortic is a party (a copy of which the Artivion Parties already produced and which clearly shows that the parties did not assign any value to the TAVR technology) . *See* July 17 Subpoena (Ex. 1) at 1-3 at ¶¶ 2, 3, 5, 6, 7, 8; November 14 Subpoena (Ex. 2) at 1-2 at ¶¶ 1-5. What makes this more remarkable is that the Artivion Parties could not have the pre-acquisition information sought by the Subpoenas; besides its CEO Dr. Shahriari, at the time of acquisition, Ascyrus had only one employee who lived in Germany, and that German employee was not retained after the acquisition. (Freitag Decl. ¶ 3.) Thus, Dr. Shahriari—the CEO of Aortic—and in some cases Edwards itself, are the only ones with the information Edwards seeks.

### 3.    *The Market Information Is Publicly Available.*

The Subpoenas further seek information about Artivion's valuation of its acquisition of Ascyrus. *See* Ex. 1 at 1 at ¶ 1. The most relevant evidence of Artivion's valuation of Ascyrus is the executed SPA. (Freitag Decl. ¶ 12.) The SPA is not only the most relevant evidence of Artivion's valuation of Ascyrus, but because Artivion is a publicly traded company, the SPA is also publicly available. (*Id.* ¶¶ 2, 11–12.) Further, the financial details of the SPA have been summarized in Artivion's press releases and in each of its subsequent quarterly filings and annual reports. (*Id.* ¶ 12.)

### 4.    *The Subpoenas Improperly Seek Privileged or Highly Confidential, Business-Sensitive Information from A Competitor That Is Not Relevant to the Dispute.*

In addition, the court may "quash or modify the subpoena if it requires … disclosing a trade secret or other confidential research, development, or commercial information." *Syngenta Crop Prot. LLC v. Willowood, LLC*, No. CV 16-MC-171-RGA, 2016 WL 4925099, at *2 (D. Del. Sept. 14, 2016); *see also* FED. R. CIV. P. 45(d)(3)(B)(i). "[C]oncern for the unwanted burden thrust upon

non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in a Rule 45 inquiry. *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998); *see also Dart Indus. Co., Inc. v. Westwood Chem. Co.*, 649 F.2d 646 (9th Cir. 1980) ("While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a nonparty is the target of discovery." (internal citation omitted)). "Courts have presumed that disclosure to a competitor is more harmful than disclosure to a noncompetitor." *Am. Standard, Inc. v. Pfizer, Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987); *see also Mannington Mills, Inc. v. Armstrong World Indus.,* 206 F.R.D. 525, 530-531 (D. Del. 2002) ("[P]otential harm exists for [one party] resulting from disclosure of the [nonpublic confidential, proprietary, commercially sensitive or trade secret] information demanded by [a business competitor].").

"To obtain discovery from a nonparty, a party must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure." *Verisign, Inc. v. XYZ.com, LLC*, No. CV 15-MC-175-RGA-MPT, 2015 WL 7960976, at *1 (D. Del. Dec. 4, 2015) (citing *R. Prasad Indus. v. Flat Irons Envt'l. Sols. Corp.*, No. CV-12-08261, 2014 WL 2804276, at *2 (D. Ariz. June 20, 2014)); *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C.A.04-1371 JJF, 2006 WL 2604540, at *2 (D. Del. Aug. 24, 2006) ("In the case of nonparty deponents, courts recognize that '[d]iscovery should be more limited to protect nonparty deponents from harassment, inconvenience or disclosure of confidential documents.'" (citations omitted).)

Many of the requests seek or would necessarily include information about the Artivion Parties' efforts to compete with Edwards, including valuable information about how Artivion makes decisions about strategic acquisitions, and how it views its overall portfolio focused on solutions for vascular and cardiac therapies and surgeries. Such highly confidential, business-sensitive information is not relevant to any claim or defense in the underlying action and is overly

broad and unduly burdensome. *See Mannington Mills*, 206 F.R.D. at 531-32 (granting motion to quash, in part, because plaintiff had failed to establish the relevance of the non-party's confidential financial, marketing, and sales data requested). Moreover, requiring the Artivion Parties to produce highly confidential, business-sensitive information to a competitor such as Edwards would cause the Artivion Parties great harm. *Id.* at 531 ("[C]ourts have traditionally recognized that disclosure to a competitor is more harmful than disclosure to a noncompetitor").

By way of example, Edwards seeks "all documents" and testimony relating to "due diligence and valuation performed" by Artivion prior to the acquisition of Ascyrus. (Ex. 1 at 1 ¶ 1; *see also id.* Deposition Topics at 2 ¶ 1; Ex. 2 at 1 ¶ 2; Freitag Decl. at Ex. B.) Edwards also demands documents and testimony concerning Ascyrus's "licensing, sale, or acquisition of any intellectual property." (Ex. 1 at 1 ¶ 2 and 2 ¶ 2; Ex. 2 at 1 ¶ 3; Freitag Decl. at Ex. B.) It further compels production of information relating to "any interest and funding from investors" in Ascyrus and the AMDS Products. (Ex. 1 at 2 ¶ 5 and 3 ¶ 5.) Edwards attempted to further add via an email to Artivion's in-house counsel a request for "[d]ocuments and communications regarding any patent or patent applications that name Dr. Shahriari as an inventor." (Freitag Decl. at Ex. B.) Putting aside issues of attorney-client privilege, and there are many, such information is highly confidential strategic, technical, and financial business information and analysis of the Artivion Parties about Ascyrus and the AMDS Products and has no bearing whatsoever on Aortic's infringement claims or Edwards' counterclaims and defenses. Edwards has not shown a clear need for its non-party competitors' confidential corporate records.

## B. THE ARTIVION PARTIES' MOTION IS TIMELY.

Rule 45(c)(3)(A) permits quashing a subpoena "[o]n timely motion," which courts consider timely if the motion is filed before the compliance date. *See, e.g.*, *PHL Variable Ins. Co. v. Alan Wollman Ins. Tr.*, C.A. No. 08-53- JJF, 2010 WL 2836388, at *1 (D. Del. July 16, 2010). From

the outset, the Artivion Parties have attempted to resolve the disputes with Edwards about the scope of the Subpoenas without success. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 51–52 (S.D.N.Y. 1996) (considering motion and deeming that objections were not waived, noting that the movant had been in "frequent contact" concerning its compliance with the subpoena before filing the motion). Courts have noted that strict adherence to Rule 45 could hinder informal dispute resolution, potentially "the efficient administration of justice." *In re Goodyear Tire & Rubber Co. Sec. Litig.*, C.A. No. 1:89-0894X, 1991 WL 172930, at *1 (N.D. Ohio June 21, 1991).

### C. THE ARTIVION PARTIES ARE ENTITLED TO FEES AND COSTS.

Rule 45 contains language protecting third parties from overly broad and burdensome subpoenas: "[a] party or attorney responsible for issuing and serving a subpoena **must** take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(c)(1) (emphasis added). Moreover, Rule 45 specifically mandates that the court "must enforce this duty ***and impose an appropriate sanction***" on a party or attorney who fails to comply with this obligation. FED. R. CIV. P. 45(d)(1) (emphasis added).

Prior to serving their Motion, the Artivion Parties notified Edwards in writing of their objections to the Subpoena and their position that they had already produced 1,500 pages of relevant documents in their possession. (Freitag Decl. ¶¶ 21–44.) Since the receipt of the Subpoenas, the Artivion Parties consistently and repeatedly offered to work with Edwards on narrowly tailoring the requests for documents and information, and already produced all relevant, nonprivileged information in their possession. (*Id.*) Artivion's in-house counsel also conferred via telephone with Edwards' outside counsel to resolve the dispute regarding the breadth of the discovery sought from Edwards, but those conferences proved unsuccessful. (*Id.* ¶¶ 23–30.) Subsequently, Artivion's outside counsel further attempted to resolve the dispute by email and telephone with Edwards' counsel. (*Id.* ¶¶ 39–44.) The Artivion Parties also offered to provide a

declaration to authenticate the documents they produced in lieu of a deposition. (*Id.* ¶¶ 36–37.) At every step, Edwards resisted.

Despite the multiple deficiencies of the Subpoenas and their multiple attempts to avoid burdening the Court with this dispute, the Artivion Parties have been forced to respond to the Subpoenas by retaining counsel to prepare and file these Motions. Accordingly, under Rule 45, the Artivion Parties are entitled to recover their attorney fees and costs for having to do so.

## IV.    CONCLUSION

For the foregoing reasons, Artivion respectfully requests that the Court quash Edwards' deposition subpoena and enter a protective order pursuant to FED. R. CIV. P. 26(c)(1) precluding Edwards from seeking further discovery from the Artivion Parties sought in the Subpoenas or issuing new subpoenas. Additionally, the Artivion Parties respectfully request reimbursement of their attorney fees and costs incurred in bringing this Motion.

Dated: November 27, 2024                    BAKER & HOSTETLER LLP

                                                  /s/ *Jeffrey J. Lyons*
                                                  Daniel J. Goettle (#6664)
                                                    Jeffrey J. Lyons (#6437)
                                                  1201 N. Market Street, Suite 1407
                                                    Wilmington, DE 19801-1147
                                                    (302) 407-4222
                                                    dgoettle@bakerlaw.com
                                                    jjlyons@bakerlaw.com

                                                    *Attorneys for Non-Parties*
                                                    *Artivion, Inc. and Ascyrus Medical LLC*