IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AORTIC INNOVATIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-158 (JPM) |
| | ) | |
| EDWARDS LIFESCIENCES CORPORATION, | ) | REDACTED - PUBLIC VERSION |
| EDWARDS LIFESCIENCES LLC and | ) | |
| EDWARDS LIFESCIENCES (U.S.) INC., | ) | |
| | ) | |
| Defendants. | ) | |

**EDWARDS LIFESCIENCES' ANSWERING BRIEF IN OPPOSITION TO
MOTION TO QUASH AND MOTION FOR ENTRY OF
PROTECTIVE ORDER AND AWARD OF EXPENSES**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Christy G. Lea
Joshua J. Stowell
Brian C. Barnes
KNOBBE MARTENS
2040 Main Street, 14th Floor
Irvine, CA 92614
(949) 760-0404

Brian C. Horne
KNOBBE MARTENS
1925 Century Park East, Suite 600
Los Angeles, CA 90067
(310) 551-3450

Mark Vorder-Bruegge, Jr.
Matthew M. Lubozynski
WYATT, TARRANT & COMBS, LLP
6070 Poplar Avenue, Suite 300
Memphis, TN 38119
(901) 537-1000

Alan E. Littmann
Doug Winnard
Michael T. Pieja
Jennifer M. Hartjes
Xaviere N. Giroud
Alice Preminger
Madeline R. Thompson
GOLDMAN ISMAIL TOMASELLI BRENNAN
 & BAUM LLP
200 South Wacker, 22nd Floor
Chicago, IL 60606
(312) 681-6000

Originally Filed: December 12, 2024
Redacted Version Filed: December 20, 2024

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ......................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................ 2

      A.    Aortic Put Ascyrus Medical's Development At Issue In Its Complaint ............... 2

      B.    Artivion Acquired Ascyrus And Licensed The Asserted Patents ......................... 2

      C.    Edwards' Subpoenas And Attempts To Negotiate Regarding The Subpoenas ............................................................................................... 4

III.  LEGAL STANDARD .................................................................................. 7

IV.   ARGUMENT ............................................................................................... 8

      A.    This Court Lacks Jurisdiction Over Artivion's Motion To Quash And Motion For Fees And Costs ................................................................ 8

      B.    The Court Should Deny Artivion's Motions With Respect To Edwards' November 14 Deposition Subpoena ......................................... 9

            1)    The Deposition Topics Seek Relevant Testimony ...................................... 9

            2)    Edwards Has A Substantial Need For The Noticed Testimony .............. 12

            3)    The Deposition Topics Do Not Impose Undue Burden On Artivion ................................................................................................. 13

                  i.    The November 14 Deposition Subpoena Seeks Relevant And Necessary Information ........................................................... 14

                  ii.   The November 14 Deposition Subpoena Is Not "Unbounded" ......................................................................... 14

                  iii.  Edwards Cannot Obtain The Requested Information By Other Means ........................................................................... 15

                  iv.   Edwards Does Not Seek Privileged Information ...................... 15

                  v.    The Stipulated Protective Order In This Case Sufficiently Addresses Artivion's Confidentiality Concerns ................................................................................... 16

C.      The Court Should Deny Artivion's Motions With Respect To
        Edwards' Narrowed September 17 Document Requests .................................... 19

D.      Artivion Is Not Entitled To Any Award Of Fees Or Costs................................. 19

V.      CONCLUSION ............................................................................................................... 20

<u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*Best Sign Sys., Inc. v. Chapman,*
    No. CIV.A. 09-5244 FLW, 2012 WL 4505996 (D.N.J. Sept. 26, 2012) ..............................17

*Buckhead Meat Co. v. AEBB of Greenwich Corp.,*
    No. 19-16766 (KM), 2022 WL 16708988 (D.N.J. Feb. 10, 2022).........................................13

*Cash Today of Tex., Inc. v. Greenberg,*
    No. CIV.A. 02-MC-77-GMS, 2002 WL 31414138 (D. Del. Oct. 23, 2002)..............12, 16, 17

*Frank Brunckhorst Co. v. Ihm,*
    No. MISC. 12-0217, 2012 WL 5250399 (E.D. Pa. Oct. 23, 2012).........................................18

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
    318 F. Supp. 1116 (S.D.N.Y. 1970).......................................................................................11

*Hart v. Nationwide Mut. Fire Ins. Co.,*
    270 F.R.D. 166 (D. Del. 2010) ................................................................................... *passim*

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.,*
    206 F.R.D. 525 (D. Del. 2002) ...............................................................................................12

*Orthobond Corp. v. Burel,*
    No. 22-217 (RK) (RLS), 2023 WL 3867245 (D.N.J. June 7, 2023)....................................8, 9

*Robocast, Inc. v. Microsoft Corp.,*
    No. 1:13-mc-00104-RGA, 2013 WL 1498666 (D. Del. Apr. 12, 2013) ................................16

*SAJ Distributors, Inc. v. Sandoz, Inc.,*
    No. CIV.A. 08-1866(JAP), 2008 WL 2668953 (D.N.J. June 27, 2008)................................20

*In re TQ Delta,*
    No. 17-mc-328-RGA, 2018 WL 5033756 (D. Del. Oct. 17, 2018)........................................20

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 26 ...................................................................................... *passim*

Fed. R. Civ. P. 45.................................................................................................................. *passim*

## I.    INTRODUCTION

Edwards issued deposition and document subpoenas to Artivion and its subsidiary, Ascyrus Medical LLC. Ascyrus was founded by the same CEO as Plaintiff Aortic Innovations. Artivion then purchased Ascyrus and, at the same time as that purchase, licensed the patent family that Aortic is now asserting against Edwards.  Through the subpoenas, Edwards seeks information directly related to due diligence conducted during the acquisition and the valuations of Aortic's patents.  Edwards has been diligent in seeking discovery from Aortic before moving forward with these subpoenas.  However, the type of information sought here—namely Artivion's and Ascyrus' due diligence and valuations of the patents—is highly relevant to damages and not available from any other source.

Despite Edwards' efforts to negotiate and tailor its subpoenas to address Artivion's objections, Artivion has refused to cooperate.  Edwards has made multiple good faith attempts to narrow the scope of the subpoenas and avoid court intervention, but Artivion either rejected these proposals or ignored them entirely.

There are several fatal errors in Artivion's motion.  First, Artivion filed this motion in the wrong court.  Artivion was required to file the motion in "the district where compliance is required"—that is, the Northern District of Georgia.  *See* Fed. R. Civ. P. 45(d)(3).  That error alone divests this Court of jurisdiction and requires denying the motion.  Second, Artivion primarily argues that the information sought is irrelevant because it pertains to Ascyrus, a company that does not make prosthetic heart valve devices.  However, this argument overlooks the fact that patents from the same patent family that Aortic is asserting against Edwards were included in the acquisition and licensing agreement between Artivion and Ascyrus/Aortic.  Finally, as noted above, Artivion is incorrect that Edwards can find the discovery elsewhere.  Artivion's due diligence documents, including communications, valuations, and investigations of Aortic's patent

family, are documents that lie solely within the control of Artivion.

Accordingly, this Court should deny Artivion's motions.

## II.    STATEMENT OF FACTS

### A.    Aortic Put Ascyrus Medical's Development At Issue In Its Complaint

Ascyrus Medical, LLC is a medical device company founded by Dr. Ali Shahriari, the CEO of Plaintiff Aortic Innovations, LLC and the sole named inventor of the patents asserted[1] by Aortic in this litigation.  *See* D.I. 52 (Third Amended Complaint) at ¶28.  Ascyrus developed a cardiovascular device called the Ascyrus Medical Device Stent ("AMDS"), which is used during surgical repairs of type-A aortic dissections.  *Id.*

Aortic has alleged that "[b]ased on interest and funding from investors, Dr. Shahriari focused his initial efforts on bringing the AMDS to market" rather than developing any transcatheter aortic valve repair ("TAVR") devices like those claimed in the Asserted Patents.  *Id.* at ¶29.  Aortic's complaint also relies on several alleged communications from Dr. Shahriari and Philip Nowell to Edwards regarding Ascyrus.  *See id.* at ¶¶42, 106, Ex. 15.

### B.    Artivion Acquired Ascyrus And Licensed The Asserted Patents

On September 2, 2020, Artivion (at the time named CryoLife) purchased Ascyrus for an upfront payment of $80 million and additional milestone payments of up to $200 million.  *See* Declaration of Christy Lea, Ex. 1 (CryoLife Press Release) at 1-2.  Artivion conducted due diligence of Ascyrus before purchasing the company.  *See* D.I. 167 at ¶10.  One of the conditions for Artivion's acquisition of Ascyrus was execution of an "Exclusive License Agreement between [Artivion] and Aortic Innovations LLC," effective the same day as Artivion's purchase of Ascyrus. *See* Lea Decl., Ex. 2 (Securities Purchase Agreement) at 54 (Section 8.2(m)); *see also id.* at 17.

---

[1] Aortic has asserted U.S. Patent Nos. 11,337,834, 11,389,310, 11,491,033, 11,497,634, and 11,523,918 (collectively, "Asserted Patents").

Artivion and Aortic executed the Exclusive License Agreement (the "License Agreement") on September 2, 2020. *See* Lea Decl., Ex. 3. █████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

██████████████████

Artivion's rights under the License Agreement extended to ███████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ *Id.* at AORT000004 (emphasis added).

████████████████████████████████████████████████████ *Id.*

at AORT000026. Each of the Asserted Patents is a continuation of the '896 Application. *See* D.I.

52 (Third Amended Complaint) Exs. 1-2, 71-73 (Asserted Patents).

The License Agreement provided that ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Lea Decl., Ex. 3 (License Agreement) at

AORT000009-10. However, the License Agreement stated that ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

other proceeding." *Id.* at AORT000010.  The License Agreement further stated that ████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████    *Id.*

### C.    Edwards' Subpoenas And Attempts To Negotiate Regarding The Subpoenas

On July 19, 2024, Edwards served Ascyrus with subpoenas requesting the production of documents and deposition testimony concerning 10 topics.  D.I. 166, Ex. 1.  Over the following months, Edwards engaged in negotiations with Artivion[2] regarding Artivion's objections and responses to both subpoenas, and Edwards made several good faith offers to narrow the subpoenas to address Artivion's concerns.  Artivion either refused or ignored Edwards' offers.

Edwards first offered to address Artivion's concerns during and immediately following a meet and confer held on September 3, 2024.  During the meet and confer, Edwards agreed to de-calendar the noticed deposition to provide Artivion additional time to respond to the subpoenas. D.I. 167, Ex. B (B. Barnes Sept. 3, 2024 email).  Edwards also agreed to withdraw two of the document requests and explained that with the remaining requests, Edwards was seeking "documents (including internal communications) regarding Cryolife's [Artivion's predecessor] valuation of Ascyrus Medical, the license and sales agreements regarding Cryolife's acquisition of Ascyrus Medical, and communications from Ascyrus Medical that may be within Artivion's possession."  *Id.*  Edwards also explained that it could not obtain this material from Aortic because Aortic would not possess documents concerning CryoLife's internal valuations of Ascyrus, and Aortic had represented that it did not have control over Dr. Shahriari's Ascyrus email account.  In response, Artivion largely refused to search for or produce responsive documents, stating without

---

[2] Although the July 19 subpoenas were served on Artivion's subsidiary (Ascyrus), Artivion responded to the subpoenas on Ascyrus's behalf and has conducted all subsequent discussions regarding the subpoenas.

explanation that it did not believe "the remaining RFPs seek information that is relevant to Edwards' current dispute with Aortic Innovations" and that it believed Edwards could obtain the requested materials from Aortic. *Id.* (J. Grier Sept. 11, 2024 email). Artivion would agree to produce only "a limited set of electronic records (including some emails) that Artivion obtained as part of the Ascyrus acquisition." *Id.*

Edwards then made a second offer to further narrow the subpoenas to address Artivion's concerns and objections on September 17, 2024. To address Artivion's concerns regarding Request Nos. 1-8 in Edwards' July 17 Subpoena, Edwards proposed that Artivion agree to produce documents in response to the following three narrowed document requests (in addition to the "limited set of electronic records" that Artivion had previously agreed to produce):

1.  Documents or communications regarding any valuation, due diligence, or investigation relating to the acquisition of Ascyrus Medical by the company formerly known as Cryolife Incorporated that are within the possession, custody, and control of Artivion, Inc. and can be identified in a reasonable search.

2.  Documents or communications regarding any license agreements between Ascyrus Medical and Aortic Innovations LLC that are within the possession, custody, and control of Artivion, Inc. and can be identified in a reasonable search.

3.  Documents or communications regarding any patent or patent application that names Ali Shahriari as an inventor that are within the possession, custody, and control of Artivion, Inc. and can be identified in a reasonable search.

*Id.* (B. Barnes Sept. 17, 2024 email) ("Edwards' September 17 Narrowed Requests"). Contrary to Artivion's characterizations, Edwards did not propose these narrowed requests in attempt to "supplement" the July 17 Subpoena or add "additional categories" of documents. Rather, Edwards presented these three narrowed categories as good faith compromises that take into account Artivion's concerns and objections to the original eight categories. Edwards again explained that

the requested materials were relevant to at least "Aortic Innovations' assertions regarding the scope of damages" and that these materials would not be within Aortic's possession, "particularly with respect to internal communications regarding the acquisition of Ascyrus and licenses between Ascyrus and Aortic Innovations." *Id.* Artivion never responded to or acknowledged Edwards' proposal. *See* D.I. 166 at 6 (Artivion admitting that it did not acknowledge Edwards' September 17 compromise proposal).

On September 27, Artivion produced a limited set of documents, along with a letter reiterating Artivion's objections. Artivion's document production did not include any internal communications regarding the acquisition of Ascyrus or communications regarding the License Agreement between Artivion and Aortic. Artivion's September 27 letter did not acknowledge or address Edwards' September 17 compromise proposal. *See* D.I. 167 at Ex. C (J. Grier Sept. 27, 2024 letter). However, in subsequent email communications, Artivion stated that it was refusing to produce documents in response to any of the narrowed topics that Edwards proposed to address Artivion's prior concerns. D.I. 167 at Ex. D (J. Grier Oct. 25, 2024 email).

Because Edwards had agreed to postpone the originally noticed deposition, Edwards served an updated deposition subpoena on in-house counsel for Artivion via email on November 4, 2024, which sought to re-calendar the originally noticed deposition for November 19, 2024. *See* D.I. 167, Ex. E. When Edwards subsequently followed-up with Artivion regarding logistics for the deposition, Artivion stated that it was refusing to accept service of the subpoena via email and that it would not produce a witness on November 19. Lea Decl., Ex. 4 (J. Grier Nov. 13, 2024 email). Therefore, on November 14, 2024, Edwards served Artivion's agent with a deposition subpoena (the "November 14 Deposition Subpoena") noticing a deposition for December 2, 2024 in Atlanta, Georgia. In a further good faith attempt to narrow the subpoena and address Artivion's concerns,

Edwards narrowed the November 14 Deposition Subpoena to the following five topics:

1. The acquisition of Ascyrus Medical by the company formerly known as Cryolife Incorporated.

2. Any valuation, due diligence, or investigation relating to the acquisition of Ascyrus Medical by the company formerly known as Cryolife Incorporated.

3. Ascyrus Medical's licensing, sale, or acquisition of any intellectual property, including intellectual property owned by AI.

4. Any agreements, including license agreements, between Ascyrus Medical and AI.

5. The legal and financial relationship between AI and Ascyrus Medical, and Ali Shahriari and Ascyrus Medical, and any change in such relationships.

D.I. 166, Ex. 2 (Nov. 14, 2024 Deposition Subpoena).  Artivion subsequently represented that it would not produce a witness to testify in response to the November 14 Deposition Subpoena and filed the instant motions.  Lea Decl., Ex. 5 (K. Quicker Nov. 26, 2024 email).

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(c)(1) authorizes a court to issue a protective order to protect a person or party from "annoyance, embarrassment, oppression, or undue burden or expense."  The person or party seeking a protective order bears the burden to show good cause for entering the order.  *Hart v. Nationwide Mut. Fire Ins. Co.*, 270 F.R.D. 166, 170 (D. Del. 2010). To show good cause, the movant must "specifically demonstrate [ ] that disclosure will cause a clearly defined and serious injury.  Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice."  *Id.* (quoting *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995)).

Federal Rule of Civil Procedure 45(d) authorizes the court for the district where compliance with a subpoena is required to quash a subpoena when certain requirements are met.  "Under Rules 45(d)(2)(b), 45(d)(3), and 45(e)(2)(B), subpoena-related motions and applications are to be made

to the court where compliance is required under Rule 45(c)." Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. Accordingly, "[t]he district court where compliance is required maintains jurisdiction over applications to quash or modify a subpoena." *Orthobond Corp. v. Burel*, No. 22-217 (RK) (RLS), 2023 WL 3867245, at \*4 (D.N.J. June 7, 2023).

## IV.    ARGUMENT

### A.    This Court Lacks Jurisdiction Over Artivion's Motion To Quash And Motion For Fees And Costs

This Court lacks jurisdiction over Artivion's Motion to Quash and Artivion's Motion for Fees and Costs, both of which are purportedly brought under Fed. R. Civ. P. 45. Under Rule 45, "[t]he district court where compliance is required maintains jurisdiction over applications to quash or modify a subpoena." *See, e.g., Orthobond Corp.*, 2023 WL 3867245, at \*4; *see also* Fed. R. Civ. P. 45(d)(3); Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. The place of compliance for Edwards' November 14 Deposition Subpoena is Atlanta, Georgia. D.I. 166, Ex. 2 (Nov. 14 Dep. Subpoena). Accordingly, this Court is not the district court where compliance with Edwards' November 14 Deposition Subpoena is required, and this Court lacks jurisdiction over Artivion's Motion to Quash the November 14 Subpoena and Artivion's Motion for Fees and Costs. While Rule 45(f) enables the court where compliance is required to transfer a subpoena-related motion to the issuing court under certain circumstances, no such transfer occurred here. Therefore, this Court should deny Artivion's Motion to Quash and Motion for Fees and Costs for lack of jurisdiction. *See, e.g., Orthobond*, 2023 WL 3867245, at \*4.

Edwards does not contest that this Court has jurisdiction over Artivion's Motion for a Protective Order under Fed. R. Civ. P. 26(c)(1). However, the standards governing protective orders under Rule 26(c) are distinct from those governing motions to quash under Rule 45(d), and Artivion cannot avoid the jurisdictional requirements set out in Rule 45 by simultaneously seeking

8

a protective order under Rule 26.  *See, e.g.*, *Orthobond*, 2023 WL 3867245 at *4.  As explained

below, Artivion fails to establish good cause for entry of a protective order under Rule 26(c).

### B.      The Court Should Deny Artivion's Motions With Respect To Edwards' November 14 Deposition Subpoena

Edwards repeatedly offered to narrow its requests and deposition topics to reach a

compromise with Artivion while still obtaining the relevant information necessary to defend itself

against Aortic's infringement claims.  Edwards' most recent attempt to do so is reflected in

Edwards' November 14 Deposition Subpoena, which included only five topics on which Edwards

sought testimony.  Each of those five topics is narrowly tailored to obtaining information about

the value of Aortic's patents, which is relevant and necessary to Edwards' defenses and

counterclaims in this litigation.

Artivion's motions do not truly dispute the relevance of the information Edwards seeks and

fail to demonstrate that compliance with Edwards' November 14 Deposition Subpoena would

subject Artivion to any oppression, undue burden, or expense.  Instead, Artivion relies on "[b]road

allegations of harm, unsubstantiated by specific examples" that are insufficient to demonstrate that

it is entitled to a protective order under Rule 26.  *See Hart*, 270 F.R.D. at 170.  This Court should

therefore deny Artivion's motions with respect to the November 14 Deposition Subpoena.

### 1)      <u>The Deposition Topics Seek Relevant Testimony</u>

Each of the five topics included in Edwards' November 14 Deposition Subpoena is

narrowly tailored to information that is relevant to Edwards' defenses and counterclaims in this

lawsuit.  Artivion fails to show otherwise.

Topics 1 and 2 in Edwards' November 14 Deposition Subpoena seek testimony regarding

Artivion's acquisition of Ascyrus and Artivion's valuations, due diligence, and investigations

relating to the acquisition.  Topics 3 and 4 seek testimony regarding agreements between Ascyrus

and Aortic, including intellectual property license agreements, that resulted from that acquisition. Topic 5 seeks testimony regarding the legal and financial relationships between Aortic/Dr. Shahriari and Ascyrus. Testimony regarding each of these topics is relevant to issues of invalidity, noninfringement, and damages for the Asserted Patents in this case.

Artivion's motions ignore a critical fact: Artivion licensed patents from Aortic as a condition of its acquisition of Ascyrus, and that license ███████████████████████████████ ████ *See* Lea Decl., Ex. 1 (Securities Purchase Agreement) at 54 (Section 8.2(m)); *see also id.* at 17. This directly undermines Artivion's argument that Ascyrus and its AMDS device are "wholly irrelevant" to Aortic's assertion of the Asserted Patents here. The inclusion of the patent license with Aortic as a key term of the acquisition demonstrates the clear connection between Ascyrus, its AMDS device, and the Asserted Patents in this case. Moreover, as noted above, the License Agreement between Artivion and Aortic requires ████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████ Lea Decl., Ex. 3 (License Agreement) at AORT000010.

Given Artivion's status as a licensee of the Asserted Patents and the terms of the License Agreement, information regarding Artivion's acquisition of Ascyrus, particularly details surrounding the License Agreement between Aortic and Artivion, is directly relevant to the issues of invalidity, noninfringement, and damages in this lawsuit. For example, Artivion's analysis of the patents covered by the License Agreement, including assessments of their validity and scope, is relevant to Edwards' defenses of noninfringement and invalidity. Additionally, communications between Artivion and Aortic concerning this lawsuit, █████████████████████, are equally relevant to Edwards' defenses and the overall resolution of the claims at issue.

Artivion's acquisition of Ascyrus is also relevant to damages issues likely to arise in this case. Because the license of Aortic's patents was a key condition of the acquisition, Artivion's valuations and due diligence regarding Aortic's patents, conducted as part of the acquisition, provide probative evidence of the value of Asserted Patents. This information is particularly significant in assessing a hypothetical negotiation under the *Georgia-Pacific* factors. *See, e.g., Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (listing fifteen factors relevant to determining a reasonable royalty rare for patent damages based on a hypothetical negotiation analysis).

Contrary to Artivion's assertions, the information Edwards seeks is not accessible from publicly available sources, such as the Securities Purchase Agreement (the "SPA") governing Artivion's acquisition of Ascyrus. The SPA is silent regarding Artivion's valuation of Aortic's patents covered by the License Agreement and does not describe any analysis during the due diligence process. Edwards is entitled to know, for example, why Artivion required a simultaneous license to **Aortic's** patents when it acquired **Ascyrus**. The SPA is similarly silent as to what, if any, impact Aortic's patents had on Artivion's acquisition of Asycrus or the amount that Artivion paid for the acquisition.

Artivion's valuations, due diligence, and investigations related to its acquisition of Ascyrus are also relevant to damages issues in this case. At the time of the acquisition, Ascyrus had developed a product that had obtained regulatory approval in Canada and Europe. *See* Lea Decl., Ex. 1 (CryoLife Press Release). The extent to which the stage of development and regulatory approval of the AMDS device influenced Artivion's acquisition of Ascyrus, including the purchase price, provides valuable insight into the perceived value of Aortic and the Asserted Patents. Notably, unlike Ascyrus, Aortic has not developed any device allegedly covered by or practicing

11

the Asserted Patents, let alone one that has achieved regulatory approval for use in patients. This distinction further underscores the relevance of Artivion's acquisition of Ascyrus to Edwards' arguments regarding the value of Aortic and the Asserted Patents in this litigation.

Artivion's motion also overlooks that Aortic—not Edwards—placed the acquisition of Ascyrus at issue in this litigation. For example, Aortic has claimed that Dr. Shahriari has not commercialized any TAVR devices due, at least in part, to "interest and funding from investors" in Ascyrus. *See* D.I. 52 at ¶29. At the same time, Aortic has also alleged that Edwards' SAPIEN 3 Ultra valve "effectively precluded [Aortic] from bringing its TAVR device to market and selling its TAVR business." *See id.* at ¶44. Edwards is therefore entitled to discovery regarding the alleged "interest and funding" in Ascyrus from investors, including Artivion, which bears directly on Aortic's allegations regarding the reasons why Aortic and Dr. Shahriari have never developed or commercialized any TAVR device.

### 2)    Edwards Has A Substantial Need For The Noticed Testimony

Edwards has a substantial need for the testimony sought by the November 14 Deposition Subpoena. *See, e.g., Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (holding that courts should consider the need of the requesting party in the requested documents or deposition testimony when assessing a motion for a protective order). As explained above, the requested testimony concerns issues that bear directly on Edwards' defenses in this case, particularly regarding the value of the Asserted Patents, which Artivion has licensed from Aortic. *Supra* §IV.B.1. Edwards therefore has a significant need for this testimony so that it can fairly defend itself against Aortic's infringement claims at trial. *See, e.g., Cash Today of Tex., Inc. v. Greenberg,* No. CIV.A. 02-MC-77-GMS, 2002 WL 31414138, at *3 (D. Del. Oct. 23, 2002) (holding that disclosure of confidential information "is considered necessary when the information is required for the movant to prepare its case for trial, which includes proving its theories and

rebutting its opponent's theories" (internal quotations omitted)).  Moreover, as explained below, Artivion has not shown that it would incur any undue burden or hardship in complying with Edwards' subpoena.  *Infra* §IV.B.3.  Therefore, Edwards' substantial need for the requested testimony outweighs any minor burden or inconvenience that Artivion might incur from a deposition on the five topics noticed in the November 14 Deposition Subpoena.

### 3)     The Deposition Topics Do Not Impose Undue Burden On Artivion

Because Edwards' November 14 Deposition Subpoena seeks relevant testimony, Artivion must show that a protective order is necessary to protect Artivion from "annoyance, embarrassment, oppression, or undue burden or expense."  *See* Fed. R. Civ. P. 26(c)(1).[3]  To meet its burden, Artivion must "specifically demonstrate [ ] that disclosure will cause a clearly defined and serious injury" and must do more than put forth "[b]road allegations of harm, unsubstantiated by specific examples."  *Hart*, 270 F.R.D. at 170.  Artivion failed to do so.

Artivion has not identified any "clearly defined and serious" injury or undue burden that it would face from complying with Edwards' November 14 Deposition Subpoena.  For example, Artivion never identifies with any particularity the cost or burden that it would incur in preparing and producing a witness for deposition in response to the November 14 Deposition Subpoena, much less establish that any such cost or burden would be undue.  Instead, Artivion's only attempts to demonstrate undue burden are its unsubstantiated arguments that: (1) the subpoena seeks

---

[3] As explained above, this Court lacks jurisdiction over Artivion's Motion to Quash Edwards' November 14 Deposition Subpoena.  *Supra* §IV.A.  Accordingly, Edwards focuses its arguments and analysis on the standards governing protective orders under Rule 26(c).  However, even if Artivion's Motion to Quash were properly before this Court, Artivion has not met its "particularly heavy" burden to show that the requirements of Rule 45(d) have been met for the same reasons that Artivion has failed to meet its burden under Rule 26(c).  *See, e.g., Buckhead Meat Co. v. AEBB of Greenwich Corp.*, No. 19-16766 (KM), 2022 WL 16708988, at *2 (D.N.J. Feb. 10, 2022) ("The burden of the party opposing the subpoena 'is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order.'").

information that is not relevant to Edwards' defenses and counterclaims; (2) the subpoena is "unbounded by time, custodian, or subject matter"; (3) the information sought by the subpoena is available from other sources; and (4) the information sought by the subpoena is privileged or confidential. *See* D.I. 166 at 13-18. None of Artivion's arguments withstand scrutiny, and they fail to meet Artivion's burden to show a "clearly defined and serious" injury.

###### i.      The November 14 Deposition Subpoena Seeks Relevant And Necessary Information

Edwards addressed the relevance and necessity of the testimony sought by the November 14 Deposition Subpoena above. *Supra* §§IV.B.1-2. Because the subpoena seeks information that is relevant to Edwards' defenses and counterclaims in this case, such as Artivion's license of the same patents that have been asserted against Edwards here, Artivion's relevance arguments fail to show that the November 14 Deposition Subpoena would impose undue burden on Artivion.

###### ii.      The November 14 Deposition Subpoena Is Not "Unbounded"

Artivion's assertion that the November 14 Deposition Subpoena is "unbounded by time, custodian, or subject matter" is incorrect and fails to establish undue burden. *See* D.I. 166 at 14.

As to subject matter, the five topics included in Edwards' November 14 Deposition Subpoena clearly set out the subject matter of the testimony sought from Artivion. D.I. 166, Ex. 2 (Nov. 14 Dep. Subpoena). Artivion fails to explain how or why it believes that the subject matter sought by those five topics is unclear or "unbounded."

As to custodian, given Artivion's refusals to produce documents in response to Edwards' document request subpoena, Edwards cannot know the relevant Artivion custodians who may possess responsive information. Artivion is therefore better positioned than Edwards to identify an appropriate deponent who can testify regarding the topics in the November 14 Deposition Subpoena and fails to explain how doing so would impose any undue burden.

As to time, the topics in the November 14 Deposition Subpoena are focused on Artivion's acquisition of Ascyrus, a process that could not have spanned more than 5 years given that Ascyrus was founded in 2015 and Artivion acquired the company in 2020. *See* D.I. 167 at ¶¶3, 10. Thus, Edwards' subpoena is not "unbounded by time," and Artivion fails to explain why or how preparing a witness to testify regarding the acquisition would impose an undue burden on Artivion given this necessarily limited time frame.

### iii. Edwards Cannot Obtain The Requested Information By Other Means

Artivion's assertion that the information sought by Edwards' November 14 Deposition testimony can be obtained by other means, such as from Aortic or publicly accessible sources, is also incorrect and fails to establish undue burden. As Edwards repeatedly explained to Artivion, neither Aortic nor Dr. Shahriari would possess information regarding ***Artivion's*** valuations, due diligence, and investigations relating to the acquisition of Ascyrus, including those relating to Aortic's patents. And, as explained above, that information is not available from publicly accessible sources, such as the SPA. *See supra* §IV.B.1. Thus, there are no alternative, less burdensome means for Edwards to obtain the relevant information sought by the November 14 Deposition Subpoena, particularly given Artivion's refusal to produce documents in response to Edwards' narrowed document requests. Aortic's attorneys also have explained that Dr. Shahriari no longer has access to his files and emails related to Ascyrus, which further exacerbates Edwards' challenge to obtaining this evidence.

### iv. Edwards Does Not Seek Privileged Information

While Artivion states, in a heading, that Edwards' subpoenas seek privileged information, Artivion's motion does not attempt to articulate or identify with any reasonable specificity what information sought by the November 14 Deposition Subpoena would be subject to attorney-client

privilege.  *See, e.g.,* D.I. 166 at 16-18.  Such broad, unsubstantiated arguments cannot meet Artivion's burden under Rule 26, much less the heavier burden that Artivion would carry under Rule 45.  *See Hart*, 270 F.R.D. at 170; *see also Robocast, Inc. v. Microsoft Corp.*, No. 1:13-mc-00104-RGA, 2013 WL 1498666, at *2 (D. Del. Apr. 12, 2013) ("A blanket assertion of privilege such as Ratner's does not meet the burden of Rule 45(c)(3)(A)(iii).").

Setting aside the lack of explanation or argument in Artivion's motion, Artivion's unsubstantiated assertion that Edwards seeks privilege information is not correct.  Edwards' November 14 Deposition Subpoena seeks nonprivileged factual testimony regarding the five topics listed in the subpoena.  Moreover, if Artivion's counsel believes that a particular question asked during the deposition may call for privileged information, Artivion's counsel can object on that basis and instruct the witness accordingly.  *See, e.g., Robocast*, 2013 WL 1498666 at *2 ("Of course, Ratner will be able to raise the privilege at the time of the deposition and the production of the documents.").

**v.    The Stipulated Protective Order In This Case Sufficiently Addresses Artivion's Confidentiality Concerns**

Artivion's assertions regarding the confidential nature of the information sought by the November 14 Deposition Subpoena also fail to establish undue burden under either Rule 26 or Rule 45 for several reasons.

First, "blanket and generalized assertions of confidentiality, absent allegations regarding specific harm, are not sufficient to sustain a motion to quash."  *Cash Today of Tex.,* 2002 WL 31414138, at *4 (internal quotations omitted).  Rather, the moving party "must show, with specificity, that disclosure will work a clearly defined and serious injury to the moving party."  *Id.* at *3 (quoting *Composition Roofers Union Local 30 Welfare Tr. Fund v. Graveley Roofing Enters., Inc.,* 160 F.R.D. 70, 72 (E.D. Pa. 1995)).  Moreover, the relevant inquiry is not the injury that

would be caused to the moving party by public disclosure of information, but rather "the injury that would result from disclosure under an appropriate protective order." *Id.* at *2 (quoting *Coca Cola Bottling Co. v. The Coca Cola Co.,* 107 F.R.D. 288, 293 (D. Del. 1985)). Artivion has failed to articulate with specificity any serious injury that would result from disclosure of the information sought by the November 14 Deposition Subpoena under these standards. For example, Artivion asserts without explanation that disclosure of information sought by the subpoena "would cause the Artivion Parties great harm" because Edwards is allegedly one of Artivion's competitors. *See* D.I. 166 at 18. Courts in this district have found these types of "blanket and generalized assertions of confidentiality" to be insufficient, even where the subpoenaed third party was a competitor of the issuing party. *See Cash of Today Tex.,* at *3 (holding assertions that "there are very real threats to the integrity of County Bank's confidential operating systems lurking within this Subpoena" and that "this information would be very useful to Easy Money" insufficient to meet the burden of quashing a subpoena).

Second, Artivion's confidentiality arguments fail to justify Artivion's requested relief – to prohibit the deposition altogether. Instead, the appropriate remedy to address Artivion's concerns regarding confidentiality would be an order extending the Stipulated Protective Order entered in this case (D.I. 30) to Artivion for purposes of responding to Edwards' subpoenas. *See, e.g., Cash Today of Tex.,* 2002 WL 31414138, at *2-4 (denying motion to quash based on allegations of trade secrets and confidentiality and holding that extending the protective order entered in the litigation to information obtained from subpoena was sufficient to address third party's confidentiality concerns); *Best Sign Sys., Inc. v. Chapman*, No. CIV.A. 09-5244 FLW, 2012 WL 4505996, at *13 (D.N.J. Sept. 26, 2012) (holding that "in order to protect confidential and/or trade secret information (see Fed. R. Civ. P. 26(c)(1)), . . . any information obtained by Plaintiff in response to

17

the Subpoenas should be subject to the same attorneys' eyes only Protective Order" entered in the litigation); *Frank Brunckhorst Co. v. Ihm*, No. MISC. 12-0217, 2012 WL 5250399, at *9 (E.D. Pa. Oct. 23, 2012) ("I will require that the information sought by Brunckhorst's subpoenas be obtained and maintained in conformity with the protective order entered by the California Court."). The Stipulated Protective Order allows parties to designate both documents and deposition testimony as either CONFIDENTIAL or ATTORNEYS EYES ONLY, and it provides numerous protections to the designating party for such material. *See* D.I. 30 at §§ 1-6. For example, the Stipulated Protective Order would enable Artivion to designate testimony it deemed confidential and commercially sensitive as ATTORNEYS EYES ONLY. *See id.* at §6. This would prohibit disclosure of that testimony to any Edwards employee other than designated in-house counsel who is not involved in competitive decision making and has submitted an Acknowledgment of Understanding and Agreement to Be Bound by the protective order. *Id.* The Stipulated Protective Order would also provide Artivion the right to notice prior to use of any of its confidential information at trial, and an opportunity to move for appropriate protections. *See id.* §14. Notably, the parties in this case have agreed that documents and testimony produced by third parties will be subject to the Stipulated Protective Order, and Artivion has already availed itself of those protections in its limited production of documents. Lea Decl., Ex. 6 (B. Barnes Sept. 4, 2024 email); *see also, e.g.,* Lea Decl., Ex. 3 (License Agreement) (produced by Artivion bearing "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" designation).

Given the substantial protections provided by the Stipulated Protective Order, Artivion has not, and cannot, show that producing a witness to testify on the topics in the November 14 Deposition Subpoena, subject to the Stipulated Protective Order, would "work a clearly defined and serious injury" to Artivion. Therefore, Artivion's confidentiality concerns do not justify

granting its motions.

**C.    The Court Should Deny Artivion's Motions With Respect To Edwards' Narrowed September 17 Document Requests**

Edwards' Narrowed September 17 Document Requests seek relevant documents regarding Artivion's acquisition of Ascyrus, Artivion's licensing of Aortic's patents, and Dr. Shahriari's patents themselves. [4]  *See* D.I. 167, Ex. B (B. Barnes Sept. 17, 2024 email).  The requested documents and communications are likely to be relevant to issues of invalidity, noninfringement, and damages in this case for the same reasons explained above for Edwards' November 14 Deposition Subpoena. *See supra* §IV.B.1.  Artivion has not made any allegations or arguments of undue burden specific to these document requests, but rather relies on the same "[b]road allegations of harm, unsubstantiated by specific examples" addressed above.  *Hart*, 270 F.R.D. at 170; *see also supra* §IV.B.3.  Artivion has therefore failed to meet its burden of showing that it would face any undue burden or expense in producing documents in response to Edwards' narrowed requests under the protections of the Stipulated Protective Order in this case.  *See supra* §IV.B.3.  As a result, this Court should deny Artivion's motions with respect to the Narrowed September 17 Document Requests.

**D.    Artivion Is Not Entitled To Any Award Of Fees Or Costs**

As explained above, this Court lacks jurisdiction over Artivion's motion for fees and costs under Rule 45(d)(1), and the Court should therefore deny Artivion's motion on that basis.  *Supra* §IV.A.  However, even if this Court were to find that it has jurisdiction over Artivion's motion, Artivion has not shown that it is entitled to any fees or costs under Rule 45 for several reasons.

---

[4] Consistent with Edwards' good faith attempts to narrow its subpoenas to address Artivion's concerns, Edwards is not seeking to enforce the July 17 Document Request Subpoena as originally issued.

First, for the reasons explained above, Artivion has not shown that Edwards' subpoenas would impose any undue burden or expense on Artivion or that this Court should quash Edwards' subpoenas. Accordingly, Artivion cannot show that Edwards failed to take reasonable steps to avoid imposing undue burden or expense on Artivion, and Artivion is therefore not entitled to any award of attorney fees under Rule 45(d)(1).

Second, even if the Court were to quash the subpoenas (which it should not), "[i]t does not automatically follow that because the Court has [quashed] the subpoenas [Edwards] acted unreasonably in issuing or relying upon them." *In re TQ Delta*, No. 17-mc-328-RGA, 2018 WL 5033756, at *4 (D. Del. Oct. 17, 2018) (quoting *Havens v. Maritime Comm'ns/Land Mobile, LLC*, 2014 WL 2094035, at *5 (D.N.J. May 20, 2014)). Rather, awards of attorney fees under Rule 45(d)(1) "are generally awarded only in the most egregious of circumstances, such as when a party has clearly breached Rule 45." *SAJ Distributors, Inc. v. Sandoz, Inc.*, No. CIV.A. 08-1866(JAP), 2008 WL 2668953, at *3 (D.N.J. June 27, 2008). This case does not involve any such egregious circumstances. To the contrary, the record shows that Edwards acted in good faith throughout the negotiations relating to Edwards' subpoenas and made multiple attempts to narrow the subpoenas to address Artivion's concerns and objections. *See supra* §II.C. Artivion refused Edwards' offers, largely repeating the same objections that Edwards had already addressed, or simply ignored them. *Id.* The record therefore demonstrates that Edwards took reasonable steps to avoid imposing undue burden on Artivion. It does not demonstrate any unreasonable or egregious behavior by Edwards that would warrant sanctions under Rule 45(d)(1).

## V. CONCLUSION

For the foregoing reasons, Edwards respectfully requests that the Court deny Artivion's Motion to Quash, Motion for a Protective Order, and Motion for Expenses.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Brian P. Egan*

_____

Brian P. Egan (#6227)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendants*

OF COUNSEL:

Christy G. Lea
Joshua J. Stowell
Brian C. Barnes
KNOBBE MARTENS
2040 Main Street, 14th Floor
Irvine, CA  92614
(949) 760-0404

Brian C. Horne
KNOBBE MARTENS
1925 Century Park East, Suite 600
Los Angeles, CA  90067
(310) 551-3450

Alan E. Littmann
Doug Winnard
Michael T. Pieja
Jennifer M. Hartjes
Xaviere N. Giroud
Alice Preminger
Madeline R. Thompson
GOLDMAN ISMAIL TOMASELLI BRENNAN
   & BAUM LLP
200 South Wacker, 22nd Floor
Chicago, IL  60606
(312) 681-6000

Mark Vorder-Bruegge, Jr.
Matthew M. Lubozynski
WYATT, TARRANT & COMBS, LLP
6070 Poplar Avenue, Suite 300
Memphis, TN  38119
(901) 537-1000

December 12, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 12, 2024, upon the following in the manner indicated:

Daniel J. Goettle, Esquire                                     *VIA ELECTRONIC MAIL*
Jeffrey J. Lyons, Esquire
BAKER & HOSTETLER LLP
1201 North Market Street, Suite 1407
Wilmington, DE 19801-1147
*Attorneys for Non-Parties Artivion, Inc. and*
*Ascyrus Medical LLC*

Adam W. Poff, Esquire                                     *VIA ELECTRONIC MAIL*
Robert M. Vrana, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

John Campbell, Esquire                                     *VIA ELECTRONIC MAIL*
Geoffrey L. Smith, Esquire
Caroline E. Burks, Esquire
MCKOOL SMITH, P.C.
303 Colorado, Suite 2100
Austin, TX  78701
*Attorneys for Plaintiff*

Casey L. Shomaker, Esquire                                     *VIA ELECTRONIC MAIL*
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, TX  75201
*Attorneys for Plaintiff*


                                                  */s/ Brian P. Egan*
                                                  _____
                                                  Brian P. Egan (#6227)

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 20, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Adam W. Poff, Esquire<br>Robert M. Vrana, Esquire<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| John Campbell, Esquire<br>Geoffrey L. Smith, Esquire<br>Caroline E. Burks, Esquire<br>MCKOOL SMITH, P.C.<br>303 Colorado, Suite 2100<br>Austin, TX  78701<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Casey L. Shomaker, Esquire<br>MCKOOL SMITH, P.C.<br>300 Crescent Court, Suite 1500<br>Dallas, TX  75201<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Daniel J. Goettle, Esquire<br>Jeffrey J. Lyons, Esquire<br>Baker & Hostetler LLP<br>1201 North Market Street, Suite 1407<br>Wilmington, DE  19801-1147<br>*Attorneys for Non-Parties Artivion, Inc. and Ascyrus Medical LLC* | *VIA ELECTRONIC MAIL* |

Katrina M. Quicker, Esquire                                    *VIA ELECTRONIC MAIL*
QUICKER LAW, LLC
900 Circle 75 Parkway, Suite 100
Atlanta, GA  30339
*Attorneys for Non-Parties Artivion, Inc. and*
*Ascyrus Medical LLC*

/s/ *Brian P. Egan*

Brian P. Egan (#6227)