UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| AORTIC INNOVATIONS, LLC, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> EDWARDS LIFESCIENCES ) <br> CORPORATION; EDWARDS ) <br> LIFESCIENCES LLC; EDWARDS ) <br> LIFESCIENCES (U.S.) INC., ) <br> ) <br> Defendants. ) | Case No. 1:23-cv-00158-JPM |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER AND AWARD OF EXPENSES**

Before the Court is third party Artivion, Inc.'s ("Artivion's") Motion to Quash Defendants' Third-Party Deposition Subpoena and third parties Artivion and Ascyrus Medical LLC's ("Ascyrus'") (collectively, the "Artivion Parties'") Motion for Entry of a Protective Order and Award of Expenses, filed on November 27, 2024. (ECF No. 165.) For the reasons set forth below, the Artivion Parties' Motions are **GRANTED IN PART** and **DENIED IN PART**.

I. **BACKGROUND**

  A. **Factual Background**

This is a civil action for patent infringement brought by Plaintiff Aortic Innovations LLC ("Plaintiff" or "Aortic") against Defendants Edwards Lifesciences Corporation, Edwards Lifesciences LLC, and Edwards Lifesciences (U.S.) Inc. (collectively, "Defendants" or "Edwards"). Plaintiff asserts Defendants infringed U.S. Patent Nos. 11,337,834 ("the '834 Patent"), 11,389,310 ("the '310 Patent"), 11,491,033 ("the '033 Patent"), 11,497,634 ("the '634 Patent"), and 11,523,918 ("the '918 Patent") (collectively, "the Asserted Patents"). (ECF No. 52

1

¶ 1.)  The Asserted Patents generally disclose devices for treating two different diseases of the heart and aorta: (1) endograft devices for repair of ascending aortic aneurysms; and (2) transcatheter aortic valve replacement ("TAVR") devices for treating aortic aneurysms.  (See U.S. Patent No. 11,337,834; U.S. Patent No. 11,389,310; U.S. Patent No. 11,491,033; U.S. Patent No. 11,497,634; U.S. Patent No. 11,523,918.)

### B.   The Parties Connection to Ascyrus and Artivion

In 2015, Plaintiff's CEO, Dr. Ali Shahriari, founded Ascyrus.  (ECF No. 166 at PageID 16807.)  There, he developed and became the named inventor on multiple patents covering "the Ascyrus Medical Dissection Stent ('AMDS'), an aortic arch remodeling device used for the treatment of acute Type A aortic dissections."  (Id.)

Artivion is involved in the manufacturing, processing, and distribution of medical devices and implantable human tissues used in cardiac and vascular surgical procedures for patients with aortic disease.  (Id.)  It has four major product families: aortic stent grafts, surgical sealants, On-X® mechanical heart valves and related surgical products, and implantable cardiac and vascular human tissues.  (Id.)  A number of Artivion's products are direct or indirect competitors with products offered for sale by Edwards.  (Id.)

In September 2020, Artivion acquired 100% of the outstanding equity interests of Ascyrus. (Id.)

### C.   Stage of Litigation and Procedural Posture

The Parties are in the midst of discovery. The fact discovery deadline is February 27, 2025.[1] (See ECF No. 192 at PageID 17576.)

---

[1] At a hearing on February 27, 2025, the Court provided for a "clean up" period through March 14, 2025, as to outstanding fact discovery in this case.  (See, e.g., ECF Nos. 280, 285.)

2

The Artivion Parties filed the instant Motions and their incorporated memorandum on November 27, 2024. (ECF Nos. 165, 166.) The Motions were fully briefed on December 27, 2024. (See ECF Nos. 187 (Response, December 12), 201 (Reply, December 27).)

**D.    The Subpoenas**

At issue are two subpoenas: a document subpoena to Ascyrus ("Ascyrus Subpoena") and a deposition subpoena to Artivion ("Artivion Subpoena") (collectively, the "Subpoenas"). (ECF No. 223 at PageID 18155.)

Defendants issued the Ascyrus Subpoena on July 17, 2024, seeking documents and a deposition. (ECF No. 166 at PageID 16808.)[2] It compelled Ascyrus to produce ten categories of documents at the deposition:

1. All documents concerning the acquisition of Ascyrus Medical by the company formerly known as Cryolife Incorporated, including any due diligence and valuation performed.
2. All documents concerning Ascyrus Medical's licensing, acquisition, or sale of any intellectual property.
3. All documents and things relating to the legal and financial relationship between [Plaintiff] and Ascyrus Medical, and Ali Shahriari and Ascyrus Medical, and any change in such relationships.
4. All communications between Ascyrus Medical and any third-party regarding the potential sale or acquisition of [Plaintiff's] transcatheter aortic valve replacement technology.
5. All documents and things relating to any interest and funding from investors in Ascyrus Medical, the Ascyrus Dissection Stent, or the Ascryus Medical Device Stent, including documents concerning the amount and source of such funding and the basis for such interest from investors.
6. All communications between Ascyrus Medical and Edwards, including emails with Phil.Nowell@ascyrus.com and Ali.Shahriari@ascyrus.com.
7. Presentations sent to Edwards by Ascyrus Medical, including the slide deck attached to the July 1, 2019 email between Ali.Shahriari@ascyrus.com and Donald Bobo at Edwards.
8. All license agreements between Ascyrus Medical and [Plaintiff].

---

[2] The deposition subpoena included nine deposition topics which tracked the document categories. (ECF No. 166-1 at PageID 16829–30.) The Artivion Parties state the deposition subpoena to Ascyrus is not at issue in this Motion. (ECF No. 223 at PageID 18155.)

3

9. All documents relating to any analysis of the market, including the United States market, for transcatheter or minimally invasive heart valve replacement methods, devices, or technology.
10. All documents and things concerning licensing practices in the industry for any transcatheter or other minimally invasive heart valve replacement methods, devices, or technology.

(ECF No. 166-1 at PageID 16828–29.)

Defendants issued the Artivion Subpoena on November 13, 2024, seeking testimony on five topics:

1. The acquisition of Ascyrus by Artivion.
2. Valuation, due diligence, or investigation relating to the acquisition of Ascyrus by Artivion.
3. Ascyrus' licensing, sale, or acquisition of any intellectual property, including that owned by Plaintiff.
4. Any agreements, including licensing agreements, between Ascyrus and Plaintiff.
5. The legal and financial relationship between Plaintiff and Ascyrus, and Dr. Shahriari and Ascyrus, and any change in such relationships.

(ECF No. 166-2 at PageID 16835–36.)

## II. LEGAL STANDARD

### A. Discovery and Rule 26

"Federal courts have broad discretion to manage discovery." Dow Chem. Can. Inc. v. HRD Corp., 287 F.R.D. 268, 270 (D. Del. 2012), aff'd, 587 F. App'x 741 (3d Cir. 2014) (citing Sempier v. Johnson & Higgins, 45 F.3d 724, 734 (3d Cir. 1995)).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The Rule 26 "relevance" standard does not apply to nonparties. Verisign, Inc. v. XYZ.com, LLC, No. CV 15-MC-175-RGA-MPT, 2015 WL 7960976, at *1 (D. Del. Dec. 4, 2015) (citations omitted). "To obtain discovery from a nonparty, a party must demonstrate that its need for discovery outweighs the nonparty's interest in nondisclosure." Id. (citation omitted).

### B. Motions to Quash and Rule 45

"On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The party looking to quash the subpoena bears the heavy burden of demonstrating the requirements of Rule 45 are satisfied. See In re TQ Delta, No. CV 17-MC-328-RGA, 2018 WL 5033756, at *1 (D. Del. Oct. 17, 2018).

"When analyzing whether a subpoena places an undue burden on a nonparty, courts consider issues such as relevance, the requesting party's need for the documents, the breadth of the request, the time period covered, the particularity with which the documents are described, and the burden imposed in responding." Id. at *2 (quoting Ebert v. C.R. Bard, Inc., No. 1:13-MC-277, 2014 WL 1365889, at *2 (M.D. Pa. Apr. 7, 2014)).

### III. ANALYSIS

The Artivion Parties move the Court to quash the Subpoenas, enter a protective order limiting further discovery sought in the Subpoenas, and award costs and fees. (See ECF No. 166 at PageID 16804, 16822.) The Court addresses each in turn.

### A. Motion to Quash

There are two issues before the Court on a motion to quash: one, a procedural issue; the other, a substantive issue. See Fed. R. Civ. P. 45(d)(3). The procedural issue is whether the Court

5

has authority to decide the motion to quash. See id. The substantive issue is whether the Court ought to grant the motion. See id.

> *i.* Procedure

A motion to quash a subpoena must be filed in "the court for the district where compliance is required." Id. Courts differ on whether this refers to the place on the face of the subpoena or the place where the documents or subpoenaed party resides. See HI.Q, Inc. v. ZeetoGroup, LLC, No. MC 22CV1440-LL-MDD, 2022 WL 17345784, at *7 (S.D. Cal. Nov. 29, 2022).

The Artivion Parties argue the Court has authority to decide the Motion to Quash, as this is the court where compliance is required. (ECF No. 201 at PageID 17862.) The Artivion Parties also argue they consented to the Court deciding the Motion. (ECF No. 223 at PageID 18157.)

Defendants argue the Motion to Quash is not properly before the Court, but should rather be before the district courts which encompass the places named on the face of the Subpoenas. (See ECF No. 187 at PageID 17360.) Defendants also raise concerns regarding whether the Artivion Parties consented to the Court for any contempt that could arise from not complying with the Subpoenas. (ECF No. 223 at PageID 18160.)

The Court finds it has authority to decide the Motion to Quash. At the Motion Hearing on January 16, 2025, the Artivion Parties consented to "resolution of all matters related to the subpoena [at issue] in Delaware." (See ECF No. 223 at PageID 18162.) The Court made "clear that [the Artivion Parties] have consented for all purposes, including the Court's determination of any issue regarding contempt and sanctions that could be imposed." (Id.) Defendants indicated this resolved the procedural issue. (Id. at PageID 18162–63.)

      *ii.*      *Substance*

The Artivion Parties argue the Court should quash the Subpoenas because (1) the information Defendants seek is irrelevant; (2) even if the information is relevant, the burden on the Artivion Parties outweighs the benefit to Defendants; and (3) any relevant information Defendants seek can be obtained from public sources or from Plaintiff. (ECF No. 166 at PageID 16805–06.)

Defendants argue the Court should not quash the Subpoenas, as they seek relevant information which cannot be obtained by other means. (ECF No. 187 at PageID 17362, 17367.) They further argue the need for the Subpoenas outweighs any minor burden on the Artivion Parties. (Id. at PageID 17364–65.)

The Court finds the Subpoenas place an undue burden on the Artivion Parties such that it must quash them. See Fed. R. Civ. P. 45(d)(3)(A)(iv); In re TQ Delta, 2018 WL 5033756, at *2. While there is some relevance to the testimony and documents Defendants seek, it is tempered by the fact that Artivion's acquisition of Ascyrus did not just involve the Asserted Patents, but also AMDS products, an entirely different product line. (ECF No. 166 at PageID 16816–17; ECF No. 201 at PageID at PageID 17964.)

Furthermore, like the subpoenas in In re TQ Delta, the Subpoenas are "extraordinarily broad." See 2018 WL 5033756, at *2. The Ascyrus Subpoena asks for "all documents," "all documents and things," and "all communications" on a variety of topics. (See ECF No. 166-1 at PageID 16828–29.) And like the subpoenas in In re TQ Delta, the Ascyrus Subpoena involves technology beyond the Asserted Patents and does not describe documents with sufficient particularity, (see ECF No. 166-1 at PageID 16829–30). See 2018 WL 5033756, at *2. The

Artivion Subpoena fares no better, as it asks for similarly broad topics.  (Compare ECF No. 166-1 at PageID 16829–30 with ECF No. 166-1 at PageID 16828–29.)

Finally, Defendants may obtain the information they seek, especially on the valuation of the Asserted Patents, from Dr. Shahriari. Defendants have secured a two-day deposition of Dr. Shahriari.  (See ECF No. 186 at PageID 17338.)  Much of the information Defendants seek can be obtained without subjecting the Artivion Parties to third party discovery.

Thus, because the Subpoenas subject the Artivion Parties to undue burden, the Court quashes them.  See Fed. R. Civ. P. 45(d)(3)(A)(iv); In re TQ Delta, 2018 WL 5033756, at *2.

### B. Protective Order[3]

"The [C]ourt may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1). "Good cause exists when disclosure will result in a clearly defined and serious injury to the party seeking the protective order."  United States v. Dentsply Int'l, Inc., 187 F.R.D. 152, 158 (D. Del. 1999) (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994)).  "In determining good cause, the court must balance the risk of injury without the protective order and the requesting party's need for the information."  Id.  Non-party status is a factor in this determination, as a non-party has a greater risk of injury given it "never under[took] the risks of disclosure" inherent in bringing or defending a lawsuit.  Id. at 160 n.7.

The Artivion Parties' argument for a protective order is intertwined with its argument to quash the Subpoenas.  (See ECF No. 166 at PageID 16814.)  They argue a protective order is

---

[3] Regardless of the Court's authority to decide the Motion to Quash, it has authority to decide the Motion for Protective Order.  See Orthobond Corp. v. Burel, No. CV 22-217 (RK) (RLS), 2023 WL 3867245, at *4 (D.N.J. June 7, 2023). The Parties acknowledged the Court's authority over the Motion for Protective Order.  (See ECF No. 223 at PageID 18157, 18163.)

warranted because Defendants seek irrelevant, cumulative evidence which poses a high burden on the Artivion Parties. (See id. at PageID 16815–21.)

Defendants argue the Artivion Parties rely on broad, unsubstantiated allegations of harm which do not support entry of a protective order. (ECF No. 187 at PageID 17361, 17365.) They further argue the Subpoenas will provide relevant, needed information. (Id. at PageID 17360, 17366.)

The Court finds good cause exists to enter a protective order. Here, there is great risk of injury to the Artivion Parties without a protective order, as the Subpoenas will subject them to present internal documents regarding strategy and other business-sensitive information. (See ECF No. 166 at PageID 16820.) And while Defendants may have a need for the information, they have the ability to obtain the information from Dr. Shahriari. (See supra Section III.A.ii.) That, in addition to the Artivion Parties' third-party status, tips the balance in favor of entering a protective order. See Dentsply, 187 F.R.D. at 158.

Thus, to protect the Artivion Parties from undue burden, the Court will issue a protective order limiting further discovery sought in the Subpoenas from the Artivion Parties. See Fed. R. Civ. P. 26(c)(1).

C.   **Costs and Fees**

The Artivion Parties argue they are entitled to costs and fees, as they have tried multiple times to resolve the issue before filing the instant Motion, but ultimately were forced to have the Court resolve their dispute. (ECF No. 166 at PageID 16822–23.) They point to the language of Rule 45, which requires the court of compliance to impose reasonable sanctions on a party which does not comply with the duty to take reasonable steps to avoid imposing undue burden on a person subject to a subpoena. (See id. at PageID 16822 (citing Fed. R. Civ. P. 45(d)(1)).)

9

Defendants state awards of attorneys' fees under Rule 45(d)(1) are reserved for the "most egregious of circumstances," which they argue this is not. (ECF No. 187 at PageID 17372 (citing SAJ Distribs., Inc. v. Sandoz, Inc., No. CIV.A. 08-1866(JAP), 2008 WL 2668953, at *3 (D.N.J. June 27, 2008)).)  They argue they have acted in good faith in negotiations with the Artivion Parties and have attempted to narrow the Subpoenas, which "demonstrates that [they] took reasonable steps to avoid imposing undue burden on [the] Artivion [Parties]." (Id.)

The Court finds the Artivion Parties are not entitled to costs and fees. The Court is persuaded by Defendants' argument that this is not a "clear[] breach[ of] Rule 45." SAJ Distribs., 2008 WL 2668953, at *3 (citing Anderson v. Gov't of Virgin Islands, 180 F.R.D. 284, 291–92 (D.V.I. 1998)). "It does not automatically follow that because the Court has quashed the subpoenas [Defendants] acted unreasonably in issuing or relying upon them." Havens v. Mar. Commc'ns/Land Mobile, LLC, No. CIV. 11-993 KSH CLW, 2014 WL 2094035, at *5 (D.N.J. May 20, 2014).  Indeed, the fact that Defendants met with the Artivion Parties and attempted to modify the Subpoenas demonstrate "reasonable steps to avoid imposing undue burden or expense." See Fed. R. Civ. P. 26(d)(1).

## IV. CONCLUSION

For the reasons set forth above, the Artivion Parties' Motions are **GRANTED IN PART** and **DENIED IN PART**.  The Court **GRANTS** the Artivion Parties' Motion to Quash and Motion for Protective Order. The Court **DENIES** the Artivion Parties' Motion for Award of Expenses. It is hereby **ORDERED** that:

- the Rule 45 deposition subpoena issued by Defendants on November 14, 2024, to Artivion is quashed;
- Ascyrus has fully complied with the document subpoena issued by Defendants on July 17, 2024, and that Defendants may not take any further actions to schedule a deposition of Ascyrus; and

10

- a subpoena shall not re-issue from this Court to Artivion or Ascyrus from Defendants unless and until said honorable court modifies or amends its Orders to permit such discovery.

**SO ORDERED**, this the 27th day of February, 2025.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE