UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| AORTIC INNOVATIONS, LLC, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:23-cv-00158-JPM |
| v. ) | |
| ) | |
| EDWARDS LIFESCIENCES ) | |
| CORPORATION; EDWARDS ) | |
| LIFESCIENCES LLC; EDWARDS ) | |
| LIFESCIENCES (U.S.) INC., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO OVERRULE PRIVILEGE OBJECTIONS AND COMPEL PRODUCTION OF DOCUMENTS AND DEPOSITION TESTIMONY**

Before the Court is a Motion to Overrule Aortic's Privilege Objections and Compel Production of Documents and Deposition Testimony, filed by Defendants Edwards Lifesciences Corporation, Edwards Lifesciences LLC, and Edwards Lifesciences U.S. Inc. (collectively, "Defendants" or "Edwards") on January 24, 2025. (ECF No. 226.) For the reasons set forth below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.     BACKGROUND**

**A.     Factual Background**

This is a civil action for patent infringement brought by Plaintiff Aortic Innovations LLC ("Plaintiff" or "Aortic") against Defendants. Plaintiff asserts Defendants infringed U.S. Patent Nos. 11,337,834 ("the '834 Patent"), 11,389,310 ("the '310 Patent"), 11,491,033 ("the '033 Patent"), 11,497,634 ("the '634 Patent"), and 11,523,918 ("the '918 Patent") (collectively, "the Asserted Patents"). (ECF No. 52 ¶ 1.) The Asserted Patents generally disclose devices for treating

1

two different diseases of the heart and the aorta: (1) endograft devices for repair of ascending aortic aneurysms; and (2) transcatheter aortic valve replacement devices ("TAVR" devices) for treating aortic aneurysms. (See U.S. Patent No. 11,337,834; U.S. Patent No. 11,389,310; U.S. Patent No. 11,491,033; U.S. Patent No. 11,497,634; U.S. Patent No. 11,523,918.)

### B. Stage of Litigation and Procedural Posture

The Parties are in the midst of discovery. Fact discovery closed on February 27, 2025. (See ECF Nos. 177, 192.) At its Hearing on February 27, 2025, the Court set a fact discovery "clean up" period ending on March 14, 2025. (See ECF No. 287.)

On January 24, 2025, Defendants filed the instant Motion and an accompanying declaration. (ECF Nos. 226, 227.) The Motion was fully briefed on February 24, 2025. (See ECF Nos. 240 (Response, Feb. 7), 270 (Reply, Feb. 24).)

## II. LEGAL STANDARD

### A. Discovery—Generally

"Federal courts have broad discretion to manage discovery." Dow Chem. Can. Inc. v. HRD Corp., 287 F.R.D. 268, 270 (D. Del. 2012), aff'd, 587 F. App'x 741 (3d Cir. 2014) (citing Sempier v. Johnson & Higgins, 45 F.3d 724, 734 (3d Cir. 1995)).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

### B. Privileges—Attorney-Client and Work-Product

"In order for the attorney-client privilege to attach to a communication, it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." In re Chevron Corp., 650 F.3d 276, 289 (3d Cir. 2011) (cleaned up). "[T]he attorney-client privilege promotes the attorney-client

relationship, and, indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys." Westinghouse Elec. Corp. v. Republic of Phil., 951 F.2d 1414, 1428 (3d Cir. 1991).

The work-product doctrine "protect[s] the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation." Id. "[C]odified in Federal Rule of Civil Procedure 26(b), [it] provides that 'a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative.'" Acceleration Bay LLC v. Activision Blizzard, Inc., No. CV 16-453-RGA, 2018 WL 798731, at *1 (D. Del. Feb. 9, 2018). "A party claiming work-product immunity bears the burden of showing that the materials in question were prepared in the course of preparation for possible litigation." Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 138 (3d Cir. 2000) (cleaned up).

## III.    ANALYSIS

Defendants move the Court to overrule Plaintiff's privilege objections Plaintiff's communications with four entities: (1) UBS; (2) potential investors, such as SMT and Fortress; (3) actual investors, such as Harbright Ventures, John Leachman, Steve Schultz, and David Myers; (4) valuation firms such as MPT and EisnerAmper.  (ECF No. 227 at PageID 18239.)

Defendants also moves the Court to de-designate privilege objections on allegedly non-privileged facts and Plaintiff's business operations.  (ECF No. 227 at PageID 18253.)

The Court addresses each subject in turn.

**A. Plaintiff's Communications with UBS**

Here, the Court considers whether Plaintiff's communications with UBS are privileged. (Id. at PageID 18239.) The Court finds Plaintiff's communications with UBS are protected by, at minimum, the common interest exception to privilege.[1]

"The common interest doctrine is an exception to the general rule that voluntary disclosure to a third party of purportedly privileged information waives the privilege." Acceleration Bay, 2018 WL 798731, at *2 (citations omitted). The privilege protects "all communications shared within a proper 'community of interest' and must be 'identical, not similar, and be legal, not solely commercial.'" Id. (quotations omitted).

Plaintiff engaged UBS to find an acquirer or investor. (See ECF No. 227 at PageID 18242–43.) In this way, UBS is similar to the third party in Intellectual Ventures I LLC v. Altera Corp., who shared a common interest with the plaintiffs. See No. CV 10-1065-LPS, 2013 WL 12322005, at *6 (D. Del. July 25, 2013). Like the third party in Altera who acted as a "finder" and negotiated deals to assist the plaintiff in acquiring patents, 2013 WL 12322005, at *6, so too did UBS work in finding an acquirer or investor. (See ECF No. 227 at PageID 18242, 43.) Thus, "there is sufficient evidentiary support to conclude that [UBS] and Plaintiff[] share a common interest." See 2013 WL 12322005, at *6.

Defendants argue that, even if the communications with UBS itself are privileged, the privilege is waived because Plaintiff sent its information to UBS "with the knowledge and expectation that UBS would disclose that information to potential third-party acquirers." (ECF No. 227 at PageID 18243.) Plaintiff maintains UBS shared no information with third parties. (ECF No. 240 at PageID 19470 (citing ECF No. 241 (Nifong Decl.) ¶¶ 10–11).) Defendants argue the

---

[1] Because the Court finds Plaintiff's communications fall under the common interest exception, it does not reach whether UBS is a functional equivalent to an employee. (See ECF No. 240 at PageID 19468.)

4

Nifong declaration overstates this position, as it states "to the best of [his] knowledge, [the draft documents and presentations prepared by UBS] were kept internal and not provided to potential third-party acquirers." (Nifong Decl. ¶ 11.)

The Court finds Nifong's declaration sufficient. In either their briefing or at the Court's February 27, 2025 Hearing, Defendants did not provide any proof that UBS sent out privileged materials to third parties. (Cf. ECF No. 227, 270.) Indeed, the proper inquiry is whether UBS actually sent out materials to third parties, not whether Plaintiff had the "expectation" that UBS would do so. See Acceleration Bay, 2018 WL 798731, at *2 (describing the common interest exception as involving "*disclosure* to a third party").

Thus, Plaintiff's communications with UBS are privileged.

### B. Plaintiff's Communications with Potential Investors

Here, the Court considers whether Plaintiff's communications with potential investors who did not ultimately invest in the company, such as SMT and Fortress, are privileged. (See ECF No. 227 at PageID 18239.) The Court finds regardless of whether Plaintiff's communications with potential investors are privileged, this privilege was waived and is not saved via common interest exception.

Even assuming Plaintiff's communications with potential investors were privileged, this privilege was waived because the potential investors are third parties. See Acceleration Bay, 2018 WL 798731, at *2 ("the general rule [is] that voluntary disclosure to a third party of purportedly privileged information waives the privilege").

Plaintiff argues the common interest exception applies to its communications with potential investors. (ECF No. 240 at PageID 19471.) This argument, however, is unavailing. To establish the common interest exception, Plaintiff must have a written agreement with the potential

investors. See Acceleration Bay, 2018 WL 798731, at *3. Plaintiff provided no indication of a written agreement with the potential investors in its briefing. (Cf. ECF No. 240.) At the Court's February 27, 2025 Hearing, Plaintiff stated there were no written agreements with the prospective investors. Because Plaintiff has not shown a written agreement between itself and the potential investors at the time of the communications, it "has not carried its burden of establishing a common legal interest [and thus] the privilege does not apply." See Acceleration Bay 2018 WL 798731, at *3.

While the common interest exception does not apply, the Court also must analyze whether the communications with potential investors are protected by the work product doctrine. See id. at *1–3 (analyzing both work product and attorney-client privilege). A document qualifies for work product privilege if the "primary purpose" behind the document's creation was to aid in possible future litigation. Id. at *1. Plaintiff, as the party asserting work product privilege, bears the burden of demonstrating this "primary purpose." See id.

Here, the Court finds the work product doctrine does not apply to communications with potential investors. Plaintiff has not met its burden, as it is unclear that the "primary purpose" of the communications with the potential investors was for aiding in possible future litigation. See id. Rather, it seems the communications had a primary business purpose: to get the potential investors to invest in the company. (See ECF No. 240 at PageID 19471 (potential investor communications regarding possibility of investing in Plaintiff).) Thus, they are not protected under work-product doctrine. See Acceleration Bay 2018 WL 798731, at *1.

Finally, Plaintiff argues a finding that the communications were privileged serves public policy, as the Court should not hinder necessary communications allowing potential investors to assess the value of the company. (ECF No. 240 at PageID 19472.) The Court is sensitive to this

6

argument.  See BriteSmile, Inc. v. Discus Dental Inc., No. C 02-3220 JSW (JL), 2004 WL 2271589, at *2 (N.D. Cal. Aug. 10, 2004), aff'd, No. C 02-03220 JSW, 2004 WL 3331770 (N.D. Cal. Oct. 26, 2004) (considering whether allowing disclosure of privileged information to facilitate the purchase of a patent portfolio could chill similar transactions).  However, the Court's finding comports with public policy because Plaintiff has the ability to protect its information.  Specifically, it may use of a non-disclosure agreement or other documentation with its potential investors to indicate "disclosures were made only under a strict duty of confidentiality."  See id. at *1.

### C. Plaintiff's Communications with Actual Investors

Here, the Court considers whether Plaintiff's communications and actual investors, such as Harbright Ventures, John Leachman, Steve Schultz, and David Myers, are privileged.  (See ECF No. 227 at PageID 18239.)  The Court reaches two conclusions regarding Plaintiff's communications with the actual investors.  First, its communications with actual investors before they invested are not privileged.  Second, its communications with actual investors after they invested are privileged.

Plaintiff's communications with its actual investors pre-investment in the company are not privileged for the same reasons the communications with potential investors are not privileged— there is no indication of a written agreement for the common interest exception to apply and any documents did not have a primary purpose to aid in litigation.  See supra Section III.B.

Plaintiff's communications with its actual investors before they invested in the company are privileged, as they are covered under the common interest exception.  The actual investors received promissory notes upon their investment, which converted to equity in 2023.  (ECF No. 240 at PageID 19473.)  Thus, the investors' legal rights would be "implicated by [Aortic's] efforts

7

to enforce its patents or defend their validity." See Finjan, Inc. v. SonicWall, Inc., No. 17-cv-04467-BLF-vkd, 2020 WL 4192285, at *4 (N.D. Cal. July 21, 2020). This is enough to create a common legal interest, as Aortic and investors would have a shared legal interest in the validity and enforceability of the patents in which they each have an interest. See In re Regents of Univ. of Cal., 101 F.3d 1386, 1390 (Fed. Cir. 1996).

At the February 27, 2025 Hearing, Defendants did not dispute that there is a common interest between Plaintiff and the actual investors post-investment.

### D. Plaintiff's Communications with Valuation Firms

Here, the Court considers whether Plaintiff's communications with valuation firms such as MPT and EisnerAmper are privileged. (ECF No. 227 at PageID 18239.) The Court finds Plaintiff's communications with the valuation firms are privileged.

Defendants argue valuation services are a "commercial activity unrelated to the provision of legal advice." (ECF No. 227 at PageID 18249 (citing William F. Shea, LLC v. Bonutti Rsch., Inc., No. 2:10-cv-615, 2013 WL 1499609, *2 (S.D. Ohio Apr. 11, 2013)).) Plaintiff counters its communications with the patent valuation firms are privileged because to assess the patents, the firms need legal advice from Aortic. (ECF No. 240 at PageID 19474.)

After examining the valuation report in camera, the Court finds Plaintiff's argument persuasive. Indeed, Defendants' main case—Bonutti—does not support their conclusion. There, the court did not protect "only financial data and calculations" because any legal advice that data contained was incidental to asset valuation. See 2013 WL 1499609, *2. Here, however, the legal advice behind the valuation report is not incidental to the asset valuation. Rather, it is key to the entire valuation. (See ECF No. 240 at PageID 19474.) Furthermore, the valuation report is not simply numbers and data. It contains a complete narrative which is intertwined with legal advice.

8

Thus, it is privileged. See Bonutti, 2013 WL 1499609, *2 (protecting communications which "contain legal advice with respect to the strength of the patent claims, even though such communications might be connected to the valuations contained in the spreadsheets").

Defendants then argue disclosure of information to the valuation firms waives privilege because the firms were not essential to obtaining informed legal advice. (ECF No. 227 at PageID 18249 (citing WebXchange Inc. v. Dell Inc., 264 F.R.D. 123, 126 (D. Del. 2010)).)  This argument is also unavailing. EisnerAmper provided litigation consulting services which required access to Aortic's legal opinions. (ECF No. 240 at PageID 19475.)  MPI facilitated legal representation at the direction of Nifong's trust and estates attorney. (Id.)  Thus, both valuation firms were necessary to obtain informed legal advice. (Id. (citing Westinghouse, 951 F.2d at 1424).)  As a result, the communications are privileged. WebXchange, 264 F.R.D. at 126

### E.  Nifong Testimony on Non-Privileged Facts and Aortic Business Operations

Here, the Court examines Defendants' request to de-designate privilege objections on allegedly non-privileged facts and Plaintiff's business operations. (ECF No. 227 at PageID 18253.)  At the February 27, 2025 Hearing, Defendants indicated they had received information on these facts from Dr. Shahriari's deposition. Thus, the Court does not grant Defendants extra time to complete its deposition of Nifong.

### IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.  The Court finds the following are **PRIVILEGED**:

- communications between Plaintiff and UBS
- communications between Plaintiff and its actual investors post-investment
- communications between Plaintiff and the patent valuation firms

9

The Court finds the following are **NOT PRIVILEGED**:

- communications between Plaintiff and the potential investors
- communications between Plaintiff and its actual investors pre-investment

Additionally, Defendants' request for an additional three hours to complete its deposition of Nifong is **DENIED**.

    **SO ORDERED**, this the 28th day of February, 2025.

                                        /s/ Jon P. McCalla
                                        JON P. McCALLA
                                        UNITED STATES DISTRICT JUDGE