IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AORTIC INNOVATIONS LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 23-158 (MN) |
| ) | |
| EDWARDS LIFESCIENCES ) | |
| CORPORATION, EDWARDS ) | |
| LIFESCIENCES LLC and EDWARDS ) | |
| LIFESCIENCES (U.S.) INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Adam W. Poff, Robert M. Vrana, Jennifer P. Siew, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, DE; John Campbell, Geoffrey L. Smith, Stone Martin, MCKOOL SMITH, P.C., Austin, TX; Casey L. Shomaker, MCKOOL SMITH, P.C., Dallas, TX – Attorneys for Plaintiff

Brian P. Egan, Anthony D. Raucci, MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, DE; Christy G. Lea, Joshua J. Stowell, Brian C. Barnes, KNOBBE MARTENS, Irvine, CA; Brian C. Horne, KNOBBE MARTENS, Los Angeles, CA; Alan E. Littmann, Doug Winnard, Michael T. Pieja, Xaviere N. Giroud, Madeline R. Thompson, Oren Kriegel, Katherine P. Kieckhafer, GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP, Chicago IL – Attorneys for Defendants

March 13, 2026
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE**

Aortic sued Edwards, claiming Edwards infringes Aortic's patents. Both sides moved for summary judgment and filed *Daubert* motions. The Court denied most of those motions at the March 3, 2026 hearing. This opinion resolves the remaining disputes.

## I.    BACKGROUND

Aortic Innovations LLC ("Aortic") brought this patent suit against Edwards Lifesciences Corporation, Edwards Lifesciences LLC, and Edwards Lifesciences (U.S.) Inc., (collectively, "Edwards") alleging that Edwards infringes U.S. Pat. Nos. 11,337,834 ("the '834 Patent"); 11,389,310 ("the '310 Patent"); 11,491,033 ("the '033 Patent"); and 11,523,918 ("the '918 Patent") (collectively, "the Asserted Patents"). The Asserted Patents generally relate to transcatheter aortic valve replacement ("TAVR" or "valve") devices. ('834 Pat. at Title ("Transcatheter Valve Repair Having Improved Paravalvular Seal")).[1]

This is not the first time Aortic has sued Edwards. Judge McCalla, assisting this district as a visiting judge, presided over a prior case between Aortic and Edwards in this District, and, after Judge McCalla's claim construction order there, Aortic stipulated to non-infringement and appealed to the Federal Circuit. *See Aortic v. Edwards*, No. 21-1377, D.I. 143, 145 (JPM) (D. Del.). While the parties' summary judgment briefing was pending in this case, the Federal Circuit issued its opinion on Aortic's appeal, affirming Judge McCalla's claim construction order. *Aortic v. Edwards*, 159 F.4th 1 (Fed. Cir. 2025) [hereinafter, *Aortic I*]. The patents at issue in *Aortic I* share a common specification with the Asserted Patents in this case.

---

[1] The parties agree that the '834 Patent's specification is representative of all four patents, so, like the parties, the Court cites to the '834 Patent's specification.

This Court heard argument on the parties' summary judgment and *Daubert* motions on March 3, 2026. At that hearing and for the reasons stated on the record, the Court denied all of the parties' *Daubert* motions, except for Defendants' motion to exclude the testimony of Aortic's damages expert (Ms. Schenk) and Defendants' motion to preclude Dr. Ali Shahriari, which the Court took under advisement. At the same hearing, the Court denied all but one summary judgment motion because the Court found issues of material fact exist. The Court took the remaining summary judgment motion, Edwards's motion for summary judgment that the claimed "frame" lacks written description, under advisement, and now, having considered the parties' briefing, exhibits, and argument, GRANTS that motion. Because that motion is case dispositive, the court DENIES Defendants' motion to exclude Ms. Schenk and Dr. Shahriari as MOOT.[2]

## II.     LEGAL STANDARD

### A.     Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Material" facts are those that "could affect the outcome of the case." *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (citation omitted). "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

---

[2]     Should this case resume in the future, these motions may be refiled.

declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A)-(B). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

The court must view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). "If there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996) (cleaned up).

### B. Written Description

The written description requirement "is part of the quid pro quo of the patent grant and ensures that the public receives a meaningful disclosure in exchange for being excluded from practicing an invention for a period of time." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1354 (Fed. Cir. 2010). It requires the specification to "describe the invention sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention at the time of the application, i.e., that the patentee invented what is claimed." *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005). Determining whether a claim satisfies the written description requirement entails comparing the scope of the claims to the scope of disclosure in the specification. *Columbia Ins. Co. v. Simpson Strong-Tie Co. Inc.*, No. 21-2145, 2023 WL 2733427, at *3 (Fed. Cir. Mar. 31, 2023) ("The written description analysis thus requires the factfinder to compare the claim scope with what is disclosed in the specification from the perspective of a skilled artisan."). When the scope of a claim goes beyond what is disclosed in the

3

specification, the "patent is void" for lack of written description. *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1122 (Fed. Cir. 2008) (citing *O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 121 (1853)). "[A] patent can be held invalid for failure to meet the written description requirement, based solely on the language of the patent specification." *Univ. of Rochester v. G.D. Searle & Co.,* 358 F.3d 916, 927 (Fed.Cir.2004).

Clear and convincing evidence is required to prove a claim fails the written description requirement. *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1376 (Fed. Cir. 2009). And although the written description requirement "is treated as a question of fact, judged from the perspective of a person of ordinary skill in the art as of the relevant filing date," it "is 'amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party.'" *Lipocine Inc. v. Clarus Therapeutics, Inc.*, 541 F. Supp. 3d 435, 446–47 (D. Del. 2021) (Bryson, J.) (quoting *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1361 (Fed. Cir. 2011)).

### III. ANALYSIS

Edwards says the asserted claims[3] are invalid for lack of written description because they cover a valve without a self-expanding frame (*i.e.*, a valve having only a single, balloon-expandable frame) even though the specification discloses only valves that have both self-expanding and balloon-expanding frames. (D.I. 397 at 4–11). Edwards is correct.

#### A. The Scope of the Asserted Claims

Every asserted claim recites a prosthetic heart valve or valve assembly that has a "frame" with "fibers that extend away from the frame." (D.I. 399 ¶¶ 9, 11; D.I. 430 ¶¶ 9,11). In claim

---

[3] The asserted claims are claims 2, 9, 17 and 18 of the '834 Patent; claim 11 of the '310 Patent; claims 1 and 5 of the '033 Patent; and claims 1, 4, 6, 7, 9, 16, 21, 22 and 26 of the '918 Patent. There is no dispute that each of these claims covers a valve without a self-expanding frame or that the written description argument is identical for each claim.

4

construction, Edwards sought to limit the term "frame" to only self-expanding frames. Judge McCalla, who presided over this case at that time, rejected Edwards's proposal and instead gave the term "frame" its plain and ordinary meaning. (D.I. 399 ¶ 10; D.I. 430 ¶ 10; *see* D.I. 88 at 20).[4] That means the claims as construed are not limited to valves having a self-expanding and balloon-expandable frame; instead, they read on a valve that has a balloon-expandable frame alone.

### B. The Specification's Disclosure

Having determined the claims cover valves having a balloon-expanding frame alone, the next question in the written description analysis is whether the specification discloses a valve that has a balloon-expandable frame alone.[5] *See Carnegie Mellon*, 541 F.3d at 1122. To do that, the Court reviews the entirety of the specification. Here, the summary of the invention states that "a transcatheter valve is disclosed. The ***transcatheter valve includes a frame component having a balloon-expandable frame*** extending distally from a proximal end of the frame component ***and a self-expanding frame secured to the balloon-expandable frame***." ('834 Pat. at 3:65–4:2 (emphasis added)). That indicates that the disclosed valve has a frame made up of two components: a balloon-expandable frame and a self-expanding frame. It also indicates that the balloon-expandable and self-expanding frames must be secured to one another.

The specification discloses two categories of embodiments for the claimed valve: a dual-frame embodiment and a serial-frame embodiment. In the dual-frame embodiment, a ballon-

---

[4] Since this case was reassigned, neither party has asked the Court to reconsider Judge McCalla's claim construction order.

[5] Aortic says that Judge McCalla already decided this question during claim construction. But in claim construction, Judge McCalla simply rejected Edwards's attempt to narrow the term "frame" to "self-expanding frame" because there was "no reason to deviate from the presumption that claim terms be given their plain and ordinary meaning." (D.I. 88 at 24). Written description was not before the Court at that time.

5

expandable frame sits within a self-expanding frame. ('834 Pat. at 13:48–50 ("As described above, the outer frame 216 of the dual-frame 214 is secured to a balloon-expandable inner frame 218[.]"); 18:1–4 ("The dual-frame 414 includes a self-expanding outer frame 416 and a balloon-expandable inner frame 218 that is secured to the self-expanding outer frame 416 and houses the valve 32.")). In the serial-frame embodiment,[6] a balloon-expandable frame and self-expanding frame are attached end-to-end. ('834 Pat. at 16:15–17 ("[T]he distal end 52 of the balloon-expandable frame 34 is secured to the proximal end 54 of the [self-expanding] frame 350[.]")). The specification teaches that, in the serial-frame embodiment, the self-expanding frame and the balloon-expandable frames can be connected in a variety of ways, including "stitching or sewing the frames 34, 350 together," "welding" the frames together, or using "other fasteners." ('834 Pat. at 16:14–21). "The frames 34, 350 may also be formed as a single, monolithic frame." ('834 Pat. at 16:21–23). Based on these disclosures, the dual-frame and serial-frame valve embodiments must have a balloon-expandable and a self-expanding frame.

The specification also discusses the benefits of having a valve with both a self-expanding and balloon-expandable frame. For example, in the dual-frame embodiment, the "combined engagement" of the balloon-expandable inner frame and self-expanding outer frame "seals the annulus 210 and the paravalvular areas, and thus, prevents paravalvular leakage," thus addressing one of the problems the invention was intended to solve. ('834 Pat. at 15:5–7, 19:53–55; *id.* at Title ("Transcatheter Valve Repair Having Improved Paravalvular Seal")). Additionally, the self-

---

[6]    Although the specification does not use the words "serial-frame," the Federal Circuit in *Aortic I* adopted this nomenclature for this embodiment, and the parties adopted it in briefing and argument before this Court. 159 F.4th at 4 ("The specification discloses two categories of embodiments. It first discloses 'serial-frame' embodiments, where a self-expanding frame and balloon-expandable frame attach at a meeting point . . . . The specification also discloses 'dual-frame' embodiments, where an inner frame sits within the outer one."). Finding it helpful, this Court adopts the same nomenclature.

6

expanding frame "stabiliz[es]" the device before the balloon-expandable frame is expanded. ('834 Pat. at 17:31–37, 19:39–41). Those disclosures reinforce that the essence of the disclosed invention requires a valve with a balloon-expandable and self-expanding frames working together to achieve the full benefits of the disclosed invention.

### C. The Specification Does Not Disclose Valve with Balloon-Expandable Frame Only

What is missing from the specification is any disclosure of a valve that is made up of only a single balloon-expandable frame or only a single balloon-expandable frame. Aortic's principal argument to the contrary relies on reading the specification as disclosing a third embodiment, a "single-monolithic frame." (D.I. 428 at 9–10). But that argument requires reading the "single, monolithic frame" language divorced from the context in which it appears in the specification. (*See* D.I. 428 at 10 (citing 7:65–67 and 16:21–23)). The entire paragraph containing the "single, monolithic frame" language reads:

> The balloon-expandable frame **34** is attached to a self-expanding frame **350**. In the illustrative embodiment, the distal end **52** of the balloon-expandable frame **34** is secured to the proximal end **54** of the frame **350** by stitching or sewing the frames **34**, **350** together, thereby forming the frame **26** of the transcatheter valve component **312**. It should be appreciated that in other embodiments the frames **34**, **350** may be secured together via welding or other fasteners. The frames **34**, **350** may also be formed as a single, monolithic frame.

('834 Pat. at 16:14–23; *see also id.* at 7:59–67 (same)). From the first sentence, that passage makes clear that it relates to how "[t]he balloon-expandable frame 34 is attached to a self-expanding frame 350" in the serial frame embodiment. ('834 Pat. at 16:14-2). The frames can be attached by stitching, sewing, welding, or fastening the frames together. ('834 Pat. at 16:14-23). Or the frames can be formed as one "single, monolithic frame." (*Id.*). Indeed, the sentence with the "single, monolithic" language says that "the frame**s** 35, 350 may also be formed as a single, monolithic frame." ('834 Pat. at 16:21–23 (emphasis added)). By using the word "frame**s**," plural, and

7

specifically identifying "35" and "350" (which are balloon-expandable and self-expanding frames respectively) as the frames, the specification makes clear that the "single, monolithic frame" is another version of the serial-frame embodiment, an embodiment in which the balloon-expandable and self-expanding frames are formed as a "single, monolithic frame."[7]

None of the other portions of the specification that Aortic relies on indicates the patentee possessed a balloon-expandable frame alone. Aortic points to a statement regarding deploying the balloon-expandable frame by "inflating the balloon" to "advance[] the frame 34 into engagement with the aortic annulus." (D.I. 428 at 5 (citing '834 Pat. at 17:36–40, 15:66–16:3)). But that statement describes implanting the serial-frame embodiment, which the preceding paragraph makes clear requires the "self-expanding frame 350." ('834 Pat. at 17:31–44; *see also id.* at 16:14–15). Aortic also points to a statement that "an interference fit is created between the stent 38 and the annulus 210 when the transcatheter valve component 312 is implanted" ('834 Pat. at 16: 5–13). That too refers to the serial-frame embodiment, which includes a "self-expanding frame 350." (D.I. 428 at 5; '834 Pat. at 16:14-15). Aortic also says that because the specification states that "[i]n some embodiments, the frame component *may be* a dual frame component," the patent teaches that the frame can be a single frame that is balloon-expandable or self-expanding. (D.I. 428 at 5-6 (citing '834 Pat. at 4:9-10)). That statement, however, differentiates between the serial-frame and dual-frame embodiments; it does not mean the specification discloses a valve comprising a balloon-expandable frame alone. (D.I. 428 at 5–6 (citing '834 Pat. at 4:9–10); *see*

---

[7] Faced with potentially losing its patent on written description grounds, Aortic says it is impossible to form a balloon-expandable and self-expanding frame together as a single-monolithic frame. (D.I. 428 at 10). Aortic, however, claimed just that in patents it is not asserting in this case. (*See e.g.*, U.S. Pat. No. 11,890,188 at cl. 9). After summary judgment briefing was submitted, Aortic cancelled that claim due to an alleged "drafting error" without specifying what that drafting error was. (D.I. 499 at 2).

*also* '834 Pat. at 12:19–22, 16:14-15). Finally, Aortic points to prior art that the patents incorporate by reference but fails to explain how or why that supports their argument here. Aortic's entire argument about prior art references is:

> [f]urther, it was widely known at the time of the invention that "frames" could be balloon-expandable or self-expanding. Indeed, Aortic's specification incorporates by reference the Palmaz and Andersen patents which disclose single frames that are balloon expandable (or self-expanding).

(D.I. 428 at 5 (citations omitted)). That, however, does not further Aortic's written description position. Those references are cited in a section of the specification discussing Figure 3. ('834 Pat. at 7:37–58). Although that paragraph is directed to the balloon expandable portion of Figure 3 (and makes clear that other balloon expandable embodiments were known), it is clear that the balloon-expandable part is only one aspect of the frame, as the "balloon-expandable frame 34 is attached to a self-expanding frame 50." ('834 Patent at 7:59–60). Moreover, Aortic does not explain how either of those prior art references (that presumably work with just a balloon-expandable frame) achieve the benefits disclosed in the specification here.

As just explained, the specification does not disclose what the claims cover: a valve comprising a balloon-expandable frame alone. So Aortic seeks to remedy the specification's deficiency through expert testimony. (D.I. 428 at 7, 9–11). Aortic's expert testimony, however, largely rehashes the arguments Aortic made in its briefing, the same arguments that are untethered to the specification's disclosure. And although "[t]he knowledge of ordinary artisans may be used to inform what is actually in the specification" it may not be used to justify claims that reach beyond the specification's disclosure. *Rivera v. Int'l. Trade Comm'n.*, 857 F.3d 1315, 1322 (Fed. Cir. 2017); *see also Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, 111 F.4th 1358, 1376 (Fed. Cir. 2024) (stating that expert testimony "untethered to the inventors' own description of the invention,

9

would improperly take the written description inquiry outside the four corners of the specification").

This case is similar to *ICU Medical v. Alaris Medical Systems*. 558 F.3d 1368 (Fed. Cir. 2009). There, the patentee drafted claims to cover a spikeless medical valve even though the specification "describe[d] only medical valves with spikes." *Id.* at 1377–78. In holding the claims invalid for lack of written description, the Federal Circuit rejected the patentee's attempt to use expert testimony as a gap-filler for the delta between the claims and specification because even if a spikeless valve "would have been obvious to a person of ordinary skill" the patentee "failed to point to any disclosure in the patent specification that describes a spikeless valve with a preslit trampoline seal." *Id.* at 1379. Put simply, the claims failed the written description test because the specification disclosed a valve with spikes but the claims covered a valve without spikes. That is exactly the case here. The '834 Patent's specification describes valves that have a balloon-expandable and self-expanding frame together, whereas the claims as construed would cover a valves without a self-expanding frame (*i.e.*, balloon-expandable only). Aortic says *ICU Medical* is different because "Aortic's specification discloses single frames that may be balloon expandable." (D.I. 428 at 7). But instead of citing the specification to support that statement, Aortic cites to its own expert's testimony. (*Id.*). That is exactly the type of gap-filling the Federal Circuit rejected in *ICU Medical*.

**D.    The Federal Circuit's Opinion in *Aortic I* Reinforces that the Claims Lack Written Description**

Finally, the Federal Circuit's opinion in *Aortic I*, further supports that the claims here fall for lack of written description.[8] Although *Aortic I* centered around claim construction (not written

---

[8]    The Court's opinion that the claims are invalid for lack of adequate written description is not dependent on the *Aortic I* decision, but, as stated, those proceedings provide additional context and support for the Court's conclusion.

10

description) for claims that are different from the claims asserted here,[9] the patents in *Aortic I* share a common specification with the patents here.  In affirming the district court's claim construction order, the Federal Circuit noted that the specification disclosed two devices, an "endograft device" and a "transcatheter valve."  159 F.4th at 3.  Like here, the endograft device was not at issue in *Aortic I*, and the Federal Circuit focused on the transcatheter valve.  *Id.*  Speaking about the transcatheter valve, the Federal Circuit noted that the specification disclosed "two categories of embodiments": a "serial-frame" embodiment and a "dual-frame" embodiment, both of which include a self-expanding frame and a balloon-expandable frame.[10]  *Id.* at 4.  The Federal Circuit did so notwithstanding the fact that Aortic pointed to the same "single, monolithic frame" language it relies on here (D.I. 496, Ex. 2 (Aortic's *Aortic I* Brief) at 34) in making its arguments.

The Federal Circuit went even further, stating that the disclosed "transcatheter valve must have a balloon-expandable frame and a self-expanding frame" and that "a skilled artisan, when reading the patent, would understand that ***the 'very character of the invention [of a transcatheter valve] requires the [self-expanding] limitation be a part of every embodiment***.'" 159 F.4th at 9 (quoting *Alloc, Inc. v. Int'l. Trade Comm'n.*, 342 F.3d 1361, 1370 (Fed. Cir. 2003) (alterations in original)).  Thus, the Federal Circuit's opinion further supports this Court's conclusion that the

---

[9]  The claims in *Aortic I* required an "outer frame" and an "inner frame."  159 F.4th at 4.

[10] At oral argument in *Aortic I*, Aortic's counsel agreed that the specification discloses two categories of embodiments, a serial-frame embodiment and a dual-frame embodiment. D.I. 403, Ex. 8 (*Aortic I* Oral Arg. Tr.) at 7:18–8:6 ("Q. There's two different basic embodiments being discussed in this patent. There's the dual frame embodiment . . . , and then there's the other kind of embodiment which I'll just call the serial frame, . . . . Is that fair to say? A. Yes, if you ignore the endograft device.")).

11

specification does not disclose a valve having a balloon-expandable frame only; instead, the specification discloses valves having both balloon-expandable and self-expandable frames.[11]

## IV.  CONCLUSION

For the foregoing reasons, Edwards's motion for summary judgment that the Asserted Claims are invalid because the term "frame" fails the written description requirement is GRANTED.  An appropriate order and judgment will follow.

---

[11] After the *Aortic I* opinion came out, Aortic submitted the Federal Circuit's opinion along with various other documents from this case (including Edwards's summary judgment briefing) to the USPTO. (D.I. 499 at 2). According to Aortic, the USPTO subsequently allowed a claim directed to a "single frame (and single, balloon expandable frame)" in a pending patent application. (*Id.*). That has no bearing on the issues in this case, particularly because the Examiner disclaimed conducting a thorough review because it was "impossible [] to review the references thoroughly with the length of references cited in this case in light of the limited time given for examination." (*Id.*, Ex. A at A008).